**HALLMARK BUILDERS, INC., Appellant,**

**v.**

**TRANS–MIX CORPORATION, Appellee.**

**No. 8337.**

Court of Civil Appeals of Texas, Amarillo.

March 19, 1973.

Rehearing Denied April 16, 1973.

Gibson, Ochsner, Adkins, Harlan & Hankins, Jon Oden, Amarillo, for appellant.

Fike & Hunter, William Hunter, Dalhart, for appellee.

REYNOLDS, Justice.

Appellee's motion for rehearing is partially granted, and this opinion is issued in lieu of our former opinion which is withdrawn.

A materialman recovered a default judgment against a subcontractor for materials furnished and a jury-verdict judgment against a contractor for the subcontractor's debt on the theory of a promissory estoppel cause of action. Affirmed in part and reversed and rendered in part.

Appellant Hallmark Builders, Inc., referred to as Hallmark, contracted to build a feed yard building. Hallmark subcontracted the concrete work and labor to J. D. Carr. Carr bought the concrete from appellee Trans-Mix Corporation, referred to as Trans-Mix. Hallmark paid Carr, but Carr did not pay Trans-Mix. Trans-Mix brought this suit against Carr and Hallmark. Hallmark was alleged to be responsible for Carr's debt under four theories of liability, one of which was that of promissory estoppel on allegations that Hallmark's conduct, on which Trans-Mix relied, induced Trans-Mix to believe that its account with Carr would be paid without the necessity of Trans-Mix's filing its statutory materialman's lien. Hallmark answered and filed a cross-action against Carr for recovery of any liability it might have to Trans-Mix. Carr neither answered nor appeared as a participating defendant at the trial.

The promissory estoppel cause of action alleged against Hallmark was submitted to the jury on only two issues of liability additional to the issue of damages, the reasonableness of attorney's fees, if recoverable, being stipulated. The liability issues, submitted over Hallmark's objections that ultimate fact issues were omitted, inquired whether, and the jury found that (1) Hallmark's conduct lead Trans-Mix to reasonably believe that it would not be necessary to file a lien in order to obtain payment; and (2) Trans-Mix's failure to file a lien was in reasonable reliance on Hallmark's conduct. Judgment was entered for Trans-Mix against Carr by default and against Hallmark on the jury verdict for the amount of the debt and attorney's fees; Hallmark was granted default judgment on its cross-action against Carr for the same amount.

Carr has not appealed; Hallmark has perfected its appeal on four points of error. The first point assigns as error the trial court's action in overruling its objections to the court's charge directed to omitted ultimate fact issues essential to the promissory estoppel theory; the last three points attack the sufficiency of the evidence to support the verdict. No objection per se has been lodged against the promissory estoppel cause of action on which the case was tried, and this appeal is considered relationally to the points of error asserted.

■ Hallmark's first point of error is overruled. Rule 274[1] dictates that an objection must point out distinctly the matter objected to and the grounds of the

___

1. All rule references are to the Texas Rules of Civil Procedure.

objections. Rule 272 requires objections to the court's charge to be presented to the court in writing before the charge is read to the jury; however, the rule specifies that this requirement is met if such objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel before the charge is read, and are subsequently transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript. Hallmark's counsel dictated to the court reporter objections that are transcribed in the statement of facts. These objections pointed out with the distinctness required by Rule 274 the omitted essential elements constituting recovery under the theory of promissory estoppel; but, although the statement of facts is signed by the judge, this record does not show these objections to have been dictated by consent, no ruling is shown to have been made on these particular objections, these objections were not transcribed for the endorsement by the court of the ruling made, if any, and his official signature, and were not filed with the clerk or included in the transcript. Under these circumstances, the rule requirements were not met and these specific objections were waived. See Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.), and cases cited therein.

■ Some three and one-half months following the return of the jury's verdict, there was filed and included in the transcript an instrument entitled "Defendant's Objections to the Court's Charge," endorsed by the trial judge over his official signature to show the objections contained therein to be overruled. The objections to the omitted elements dictated to the court reporter are not contained in this instrument; the objections stated are that the two special issues submitted do not submit, but omit the submission of, all of the ultimate issues of fact necessary to constitute a cause of action on the theory of promis-

sory estoppel. These objections are, and have been held to be, too general to delineate the distinctness required by Rule 274. Cree v. Miller, 255 S.W.2d 565 (Tex.Civ. App.—Eastland 1953, writ ref'd n. r. e.); Southwest Stone Co. v. Symons, 237 S.W. 2d 380 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n. r. e.). Thus, the charge of the court is not subject to the error asserted.

The other points of error present no evidence, insufficient evidence and contrary to the great weight and preponderance of the evidence propositions. A statement of the evidence is necessitated. Four witnesses testified. Edward C. Jones, president of Trans-Mix, defendant J. D. Carr, as an adverse witness, and William Hunter, attorney for Trans-Mix, were called by Trans-Mix. Tom McClure, secretary of Hallmark, was the only witness called by Hallmark.

Jones testified that Tom McClure, who had supervisory responsibility on this project, told him that Hallmark had entered into an agreement to construct the feed yard building, and that Hallmark would be looking to Trans-Mix to furnish the concrete. Later on August 31, 1970, Carr, with whom Trans-Mix had conducted no prior business as a subcontractor to Hallmark, purchased concrete from Trans-Mix. Jones stated that the concrete was sold and invoiced to Carr and not to Hallmark. Jones "felt" Carr's credit was good because of Trans-Mix's prior dealings with Hallmark. These dealings extended over a period of some eight to ten years during which time Trans-Mix never had to file a materialman's lien to secure payment from Hallmark's subcontractors. It was Jones' position that this was an accommodation to Hallmark, although Jones said that the usual procedure is for a contractor to pay the subcontractor and then the subcontractor pays for his materials. When Trans-Mix had difficulty in collecting a subcontractor's account, Jones stated that Hallmark would make joint checks or insist that the subcontractor pay Trans-Mix when Hallmark paid the subcontractor.

However, Jones could recall only one prior occasion, occurring a year or more before the Carr transaction, when Hallmark had assisted Trans-Mix by making its check payable jointly to Trans-Mix and a subcontractor whose account Trans-Mix had difficulty in collecting.

On or about October 1, 1970, Trans-Mix billed Carr for the account. Although the subsequent events are not fixed by dates, when Trans-Mix was not timely paid by Carr, Jones telephoned Carr, who said he would try to pay when he got paid. Jones then telephoned Weldon McClure, an official of Hallmark, and advised that Carr had not paid Trans-Mix. Jones testified that Weldon McClure stated there was some difficulty with Carr and they were trying to straighten it out. Subsequently, Jones again telephoned Weldon McClure and reminded him that Trans-Mix had not been paid. According to Jones, Weldon McClure became upset, stating that it was not his capacity to collect any bills. Jones further stated that thereafter Weldon McClure called Jones and said Hallmark and Carr had arrived at some solution and Carr had accepted Hallmark's check. Jones telephoned Carr, who said he had not received enough money from Hallmark to pay all his labor and materials, and that he would pay Trans-Mix when he could. Jones recognized his right to perfect the materialman's lien, but he admitted that none of the required procedures had been undertaken.

It was Carr's testimony that settlement on the feed yard subcontract was made in connection with other subcontracts he had with Hallmark and, because of a dispute as to the amount he was due, he finally accepted Hallmark's check in an amount of $1,000.00 to $1,500.00 less than he thought he was owed. Tom McClure's testimony was that Hallmark was paid for its feed yard contract performance on September 14, 1970, and the next day Hallmark paid Carr the amount of his subcontract which was not involved with other jobs. The amount paid Carr was greater than the amount Carr owed Trans-Mix.

■ Hallmark preserved its no evidence point by its motion for instructed verdict, its objections to the submission of the two liability issues in the court's charge, its motion for judgment notwithstanding the jury's verdict, and, together with its insufficient evidence points, included the no evidence point in its motion for new trial. The no evidence point must be considered in relation to only that evidence most favorable to the submitted special issues, disregarding entirely that evidence which is opposite or contradictory in nature, to determine whether there is any evidence of probative force to support the jury's findings. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950). From this perspective, the no evidence point must be sustained.

■ Shown by the direct evidence, the only course of conduct on the part of Hallmark which could lead Trans-Mix to reasonably believe it would not be necessary to file its lien to enforce Carr's payment was the fact that Hallmark in the past had assisted Trans-Mix in collecting accounts. Yet, the record is devoid of any evidence that the prior assistance, and particularly Hallmark's conduct regarding the present Carr transaction, was taken to induce Trans-Mix to forbear to perfect a materialman's lien. In the instant transaction, there is no other conduct that rises to the status of a promise on which Trans-Mix was entitled to rely. Hallmark did not request that Trans-Mix sell to Carr, or promise either to pay Carr's debt or to see that it was paid. Trans-Mix sold the concrete to Carr, billed him for it, and requested only Carr to pay the account. There was no conversation with respect to a materialman's lien, and particularly there is no testimony that Hallmark requested Trans-Mix to forbear its right to perfect its lien. In short, there is no testimony that Trans-Mix's forbearance to file its lien was because of any conductive promise

on the part of Hallmark. Additionally, there is a complete absence of evidence that Trans-Mix failed to file its lien in reliance on Hallmark's conduct. Jones testified only that Trans-Mix had a right to file its lien; he did not state the reason the lien was not filed, and especially he did not testify that any forbearance to file a lien was because Trans-Mix relied on Hallmark's conduct to constitute a promise to pay, or to secure the payment of, Carr's debt. The evidence adduced to prove that Hallmark's conduct lead Trans-Mix to reasonably believe it would not be necessary to file its lien in order to obtain payment of Carr's debt creates no more than a mere surmise of that vital fact and, in legal effect, is no evidence of the fact. There is no testimony that Trans-Mix's failure to file the lien was in reliance on Hallmark's conduct. Therefore, there is no evidence to support the jury's findings; and there is a clear duty to sustain the no evidence point. See University of Texas: Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.R. 361.

It becomes the duty of this court to render the judgment that the trial court should have entered. Rule 434. There is no contention that the case has not been fully developed. Carr has not appealed, and that portion of the judgment allowing Trans-Mix recovery against Carr has become final, is severed from the cause and is affirmed. The remaining portion of the judgment is reversed and judgment is rendered that Trans-Mix take nothing by virtue of its asserted cause of action against Hallmark and that Hallmark, whose judgment against Carr is dependent upon its liability to Trans-Mix, take nothing as a result of its cross-action against Carr.

The insufficient evidence points of error are not discussed; but, if they were reached, they would be sustained.

Accordingly, the judgment of the trial court is affirmed in part and reversed and rendered in part as ordered herein.