HARDWARE MUTUAL CASUALTY
COMPANY, Appellant,

v.

BUCK'S TRI–STATE IRRIGATION EN-
GINE CO., INC., Appellee.

No. 8387.

Court of Civil Appeals of Texas,
Amarillo.

Oct. 15, 1973.

Rehearing Denied Nov. 12, 1973.

Crenshaw, Dupree & Milam, Cecil C. Kuhne and J. Orville Smith, Lubbock, for appellant.

Blanchard, Clifford, Sims & Kidd, John C. Sims, Lubbock, for appellee.

ELLIS, Chief Justice.

In this appeal, the insurer-appellant challenges the trial court's judgment in favor of the insured-appellee on the grounds that (1) the appellee's loss of the particular personal property was excluded from coverage under the policy provisions; or (2) in the event of liability, recovery should be reduced in accordance with the pro rata reduction provisions of the policy because of appellee's failure to include this property in its total value of reported inventory prior to the loss. The judgment of the trial court is affirmed as to liability and reformed as to the amount of recovery.

Buck's Tri-State Irrigation Engine Co., Inc., instituted suit against Hardware Mutual Casualty Company to recover under a merchant's property insurance policy issued by defendant-appellant. The claim forming the basis of the suit arose from the theft of certain items of equipment and component parts of a racing vehicle, commonly known as a "dragster," owned by the appellant corporation and used by it primarily for advertising purposes. The main place of business of the corporation is located at 4452 Canyon Drive in Amarillo, Texas, but for most of the time prior to the loss and claim here involved, the property in question was kept in Lubbock, Texas. At the time of the theft the dragster, parts and equipment were located in a certain rented garage in Lubbock. The claimant alleged that the total value of the various items stolen was $9,783.70; however, some of the listed items were recovered, a part of which had been damaged subsequent to the theft.

There are two provisions in the insurance policy pertinent to decision in this case. The first is entitled "PROPERTY EXCLUDED" which reads in part:

"This policy does not insure:

"A. Aircraft, *automobiles;*" (emphasis added).

The term "automobiles" is not defined in the policy. The second provision relates percentage liability limitations:

"In the event of loss or damage insured hereunder the Company shall be liable for no greater proportion of such loss or damage than the total values last reported by the Insured prior to the loss or damage bears to the actual total values for the period for which such report was made."

This provision is operative in connection with the requirements in the policy that the insured make monthly reports to the company of the actual cash value of its stock of merchandise, equipment, fixtures, etc. Under the terms of the policy the insurer was not liable for loss or damage of personal property for more than $110,000.00 at the plaintiff's designated Amarillo location, or more than $10,000.00 "at any unnamed location."

After trial before the court without a jury, the court entered judgment for the insured in the sum of $8,153.55, plus interest and costs. In its judgment, the trial court made findings that (1) the property stolen was not an "automobile" within the exclusionary provision of the policy; and (2) the evidence was sufficient to show that plaintiff complied with the inventory reporting provision of the policy and that such stolen property was included within the total amount of the last inventory submitted to the insurer before the theft. Appellant has predicated its appeal on three points of error.

In its first point of error, appellant asserts that the court erred in rendering judgment on the basis of its finding that the stolen property was not an "automobile" within the exclusionary terms of the policy. The evidence showed that the dragster and a large quantity of new and used parts were stored in the garage in Lubbock. The dragster vehicle was not taken and nothing was removed from it. The property stolen consisted wholly of parts and items of equipment lying at various places within the garage and intended for use on the dragster. Some of the parts had been on the dragster at one time and removed, while others were new and had never been taken from their containers.

Appellant cites the case of Steiker v. Philadelphia Nat. Ins. Co., 11 N.J.Super. 55, 77 A.2d 513 (1950) in support of its contention that the term "automobile" includes parts of a vehicle which have not been attached to the vehicle. The fire insurance policy in that case stated that the terms "'Automobile shall also include *its equipment* and other equipment permanently attached thereto'." (emphasis added). The court held that there was nothing in the policy to indicate a requirement that the equipment be attached. However, the court's determination was made on the basis of the words "its equipment" in the policy. We note that the policy here merely excludes automobiles from its coverage, and makes no mention of "its equipment" as did the policy in the Steiker case. In this connection, the appellee contends that even if the theft of the various parts be considered as technically the theft of the dragster, such dragster was not an "automobile" within the exclusionary terms of the policy. The case of Futrell v. Indiana Lumbermens Mutual Insurance Company, 471 S.W.2d 926 (Tex.Civ.App.—Houston [1st. Dist.] 1971, no writ) dealt with an automobile insurance policy which, as in the instant case, contained no definition of the term "automobile." The court in that case, while holding that a motorcycle was not an automobile in the ordinary sense of the word, specifically held that the term

"automobile" was not ambiguous, and that terms used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. There is no indication in the policy in the instant case that the term "automobile" was intended to have a technical or different meaning.

A basic matter for determination is whether a dragster of the type here involved is included in the generally used and accepted meaning of the term "automobile." Appellant relies upon the case of Williams v. Cimarron Insurance Co., 406 S.W.2d 173 (Tex.1966) in support of its contention that the dragster here involved was an automobile. The vehicle in that case was a stripped-down 1947 Ford sedan with a 1954 Mercury motor which had been originally manufactured by the Ford Motor Company and later modified and converted into a stock car racer. It had no headlights, tail lights, windshield, horn, or any other safety equipment and was not licensed for operation on any public highway. The insurance policy in question defined the term "automobile" as follows:

". . . a land motor vehicle or trailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor *or other equipment designed for use principally off public roads,* except while actually upon public roads, . . . ." (emphasis added).

The court held that the racing vehicle in question was not an automobile within the exclusionary terms of the policy since it was designed for use principally off public roads. Although it was stated in the court's opinion that the vehicle "was an automobile within the usual meaning of the term," we do not consider that the Williams case, when viewed in its entirety, is applicable to the instant case. The racing vehicle in *Williams* had at one time been a standard automobile designed for use on public streets and highways. The dragster in the instant case had at no time been a factory-made vehicle, and it had never

been designed for use, or used on a public street or highway. It had no radiator, no reverse gear, and it had no body except the chassis upon which the engine was mounted. A parachute was used to assist in slowing or stopping the vehicle. The testimony showed that the unit was not designed to go more than a quarter of a mile and required a special type of fuel. It could travel only a short distance because of its limited fuel capacity and lack of a sufficient cooling system. It is our opinion that under these facts and circumstances, the Williams case, in which the apparent basis for decision was the specific policy provision, is not controlling in the disposition of this case.

Further, in the case of Combined American Insurance Co. v. Ganzer, 350 S.W.2d 211 (Tex.Civ.App.—Waco 1961, no writ) the court noted that in Texas the term "automobile" generally means a wheeled vehicle propelled by its own motor for transportation of persons or property on a street or roadway. The vehicle here involved was not designed to be driven, and had never been placed or operated, upon a public street or highway. The vehicle was transported by trailer from one drag strip or location to another.

■ In view of the foregoing authorities and the particular facts in this case, we hold that the exclusionary provision of the policy did not operate to absolve the insurer from all liability for loss suffered by the insured. Appellant's first point is overruled.

■ Appellant contends in its second and third points of error that there was no evidence or insufficient evidence to support the trial court's finding that plaintiff complied with the inventory reporting provisions of the policy and that the property stolen was included in plaintiff's last inventory report before the loss. Since we have held that the property lost or damaged is not excluded from coverage under the policy, the appellee's compliance or noncompliance with the above quoted requirements for inventory reporting is de-

terminative of the amount of the insurer's liability for the loss suffered by the insured. Under the terms of the policy, if the appellee complied with the reporting requirements and included the value of the stolen property in the last report before the theft, then appellant's liability would be to the full extent of the loss as found by the trial court. If the insured were not in compliance with such reporting requirements the amount of liability would be determined by application of the pro rata reduction provision of the policy. It is here noted that although the alleged loss was $9,783.70, some of the parts and equipment of the dragster were recovered, and the trial court found, in effect, that the total net loss of the insured was $8,153.55. The invocation of the pro rata reduction provision is dependent upon our holding that the trial court erred in its finding that the evidence was sufficient to show that plaintiff complied with the inventory reporting provision and that the stolen property was in fact included in the last inventory report filed before the theft. The only evidence on this point consists of the testimony of the president of the plaintiff corporation, Prentiss Cunningham, and the November, 1971, inventory report. The pertinent testimony of Mr. Cunningham is as follows:

"Q Prentiss, in this policy, insurance policy, did you include in your monthly reports the value of that dragster?

"A To the best of my knowledge. Now, the man that runs the store for me in Amarillo generally sends those reports in every month, or did send them in, and I would assume, you know, when they bought the car and paid for it, a man of his competence would send the values in."

*　*　*　*　*　*

"Q And you had always included, had you not, the value of your dragster and the parts and everything inside your inventory that you sent in to the company?

"A To the best of my knowledge. Like I say, that man up there sends it in but

he is a man that is capable of running the business that has a volume of around a million dollars a year, so I would say that he was more than capable of sending in equities for the firm.˙ I mean, I never did specifically ask him as to that point, but I didn't feel it was necessary."

\* \* \* \* \* \*

"Q Now of course, whether or not that $10,000.00 that you say that thing cost your company and whether or not that was included in the inventory that was reported by your man in Amarillo, you just don't know, do you?

"A I can't honestly say."

Appellant asserts that this testimony was based on conjecture and surmise, and could not, therefore, support the trial court's finding of inclusion in the inventory. The rule in Texas is that where the probative force of evidence is such that it raises only surmise or suspicion of a fact sought to be established, the evidence is "no evidence" in legal contemplation and will not support a finding which comprehends existence of the disputed fact. Santos Oil Company v. Lerma, 439 S.W.2d 476 (Tex.Civ.App.— San Antonio 1969, no writ). Findings may be based on inferences fairly drawn from facts in evidence, but may not be based on surmise or speculation. Briones v. Levine's Department Store, Inc., 446 S.W.2d 7 (Tex.1969). It is clear that the quoted testimony is speculative and conjectural and in accordance with the above stated rule, constitutes no evidence of probative force.

■ The only other evidence regarding appellant's compliance or non-compliance with the reporting provision is the inventory report of November, 1971. That report was made on a form which provided for entry of the total value of inventory at all locations enumerated by the insured. The only entry on the form was the figure $44,815.00 at a location listed as 4464 Canyon Drive. Although the entry makes no mention of the city in which the particular address is located, the fact that it is located in Amarillo, Texas, is easily ascertainable from the address block on the form which reads:

"Buck's Tri-State Irrigation Engine Co.
"4464 Canyon Dr.
"Amarillo, Texas."

Since it is undisputed that the items stolen were located in Lubbock, Texas, it is apparent from the face of the November, 1971, report that those items were not included in the report, since no entry was made showing merchandise at any location other than 4464 Canyon Dr. It is our opinion that there is no evidence of probative force that appellant included the value of the stolen items in the last inventory report. Accordingly, we sustain appellant's second point of error.

The sum of $8,153.55, representing the trial court's finding as to the value of the loss suffered by the appellee, is unchallenged. Further, the sum of $44,815.00 shown on the November, 1971, inventory report as to the value of property located in Amarillo, together with the $9,783.70 asserted by appellant as the value of the property located in the leased premises in Lubbock at the time of the theft, but herein found not to have been included in the November, 1971, inventory report, aggravates the amount of $54,598.70 as the total value of appellee's property related to the policy at the time of the loss. Although the appellant has vigorously denied any liability on the grounds that the property in question was excluded from coverage, we have herein held otherwise, and it is our opinion that the net amount of the loss determined by the court is subject to the application of the proportionate reduction provision by reason of non-compliance with the reporting requirements. As stated in appellant's brief: "Assuming liability on the policy, defendant would be liable only for $44,815.00 over $54,598.70 times $8,153.55 ( . . . the proportion of the total value last reported by the insured to the actual total value times the amount of the loss), which is $6,692.49."

■ There is no contention that the case has not been fully developed, and it is

the duty of this court to render the judgment the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure. Also, see Great Plains Oil and Gas Company v. Foundation Oil Company, 137 Tex. 324, 153 S.W.2d 452 (1941); and Hallmark Builders, Inc., v. Trans-Mix Corporation, 493 S.W.2d 250, 254 (Tex.Civ.App.—Amarillo 1973, writ dism'd). From a review of the entire record in this case, it is our opinion that the insurance company is liable to the insured for the loss sustained subject to the application of the pro rata reduction provision of the policy.

The judgment of the trial court is affirmed as to liability, but modified by the application of the pro rata reduction provision by reason of the non-compliance with the reporting requirements. Accordingly, judgment is hereby entered in favor of the insured against the insurer for the sum of $6,685.91, plus costs of suit and interest at the rate of 6% per annum from date of judgment.

Affirmed as reformed.