**FARMERS INSURANCE CO., INC., Plaintiff,**

v.

**Mary McCARTHY, et al., Defendants/Third Party Plaintiff/Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY and James Smith, Third Party Defendants/Respondents.**

**No. 62963.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 25, 1994.

Motion for Transfer to Supreme Court Denied March 9, 1994.

Gary Alan Growe, Clayton, for appellant.

Robert Joseph Wulff, St. Louis, for respondents.

CRAHAN, Judge.

This is an appeal from an order dismissing a third party petition for damages filed by defendant/third party plaintiff, Mary McCarthy ("McCarthy"), against third party defendants American Family Mutual Insurance Company ("American Family") and James Smith ("Smith") alleging breach of fiduciary duty and negligence based on Defendants' failure to advise her of the availability of underinsured motorist coverage which would have provided her a source of additional recovery for injuries she sustained in an automobile accident. The trial court dismissed the third party petition for failure to state a claim upon which relief can be granted.[1] We affirm.

---

1. The court designated its judgment as final and certified that no just reason existed for delay, thus rendering the judgment final for purposes of appeal. Rule 74.01(b).

McCarthy was injured in a motor vehicle collision when her vehicle was struck by the tortfeasor operating her car on the wrong side of the road. Her medical bills from these injuries exceeded $200,000.00. The tortfeasor's vehicle was covered by liability insurance issued by Farmer's Insurance Company. The policy had limits of $30,000/$60,000. At the time of the collision, McCarthy had a policy of automobile liability insurance with Defendant American Family purchased through American Family's agent, James Smith. The policy contained no provision for underinsured motorist coverage.

The case was initiated as an interpleader action by Farmer's Insurance. McCarthy filed a third party petition seeking compensation from Defendants under theories of breach of fiduciary duty and negligence based on allegations that Smith failed to advise McCarthy of the availability and advisability of underinsured motorist coverage. Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. The trial court sustained Defendants' motion and expressly held that Defendants American Family and James Smith owed no duty to McCarthy under the facts as alleged and put in issue by her petition. This appeal followed.

■ On review of a dismissal for failure to state a claim upon which relief can be granted, we allow the pleading its broadest intendment, treat all facts alleged as true, construe all allegations favorably to the plaintiff and determine whether the averments invoke substantive principles of law which entitle the plaintiff to relief. *East v. Galebridge Custom Builders, Inc.*, 839 S.W.2d 720, 722 (Mo.App. 1992).

The only issue before the court is whether under the facts as alleged by McCarthy in her third party petition, Defendants owed an affirmative duty to advise her of the availability or advisability of underinsured motorist coverage. Both parties agree that there is no Missouri case which holds that an insurance agent owes an affirmative duty to a client to advise the client regarding the availability or advisability of underinsured motorist coverage. McCarthy contends, however, that Defendants owed McCarthy this duty

because of the special relationship which existed between her and Smith. Specifically, McCarthy alleged that she had for some time "solely relied" on Smith for consultation and advice with respect to insurance matters and had inquired of Smith as to her coverage needs and what was available to her under the policies of liability insurance issued by American Family. "As a result" of Smith's provision of "exclusive advice and consultation" with respect to such matters, McCarthy alleged that a "special relationship and repose" developed, which was breached by Smith in failing to advise her of the existence of underinsured motorist coverage. McCarthy asserts that such allegations are sufficient to state a claim for relief.

■ First, McCarthy argues that Smith was her agent and as such owed her an affirmative duty to advise her regarding underinsured motorist coverage. Under certain circumstances an insurance agent may be held to owe certain duties to one seeking to purchase insurance. "When an insurance agent undertakes to procure insurance for a party, with a view to earning a commission, he becomes the party's agent and owes a duty to the party to act with reasonable care, skill and diligence." *Barnes v. Metropolitan Life Ins. Co.*, 612 S.W.2d 786, 787 (Mo.App. 1981) (quoting *Pittman v. Great Am. Life Ins. Co.*, 512 S.W.2d 857, 861 (Mo.App.1974)). If an agent is unable to effectuate the insurance, he has a duty to timely notify his client that the insurance requested was not obtained. *Id.* Failure of an agent to so notify his client will render the agent liable for breach of contract or in tort for negligent breach of the agent's duty to timely notify the client that the requested insurance was not obtained. *Id.*

■ The principal flaw in McCarthy's contention is that, even affording her third party petition its broadest intendment, she has not pleaded any facts sufficient to support a characterization of Smith as *her* agent or that Smith failed to carry out any undertaking on her behalf. The only allegation with respect to agency is an allegation that Smith was at all times an agent of American Family and acting within the course and scope of his

employment with American Family. Although it is true, as McCarthy asserts, that under certain circumstances an insurance agent may serve as the agent of both the insurer and the insurance customer, an essential prerequisite to such status is some consensual undertaking by the agent, for at least the prospect of compensation, to act on behalf of the customer as his principal. *Barnes,* 612 S.W.2d at 787. Where there is such an undertaking, the agent may properly be held to a concomitant duty to act with reasonable care, skill and diligence in performing the duties he has agreed to undertake. *Id.*

Here, there is no allegation that Smith failed to carry out any undertaking to procure insurance ordered by McCarthy. So far as can be determined from the petition, Smith did, in fact, obtain the coverage requested by McCarthy. Rather, McCarthy's complaint is that Smith failed to inform her of the existence of additional coverage. McCarthy concedes that no Missouri cases have ever recognized or imposed a duty on the part of insurance agents to inform potential customers of the availability of optional coverage but urges that we do so by establishing such a duty as part of a generalized standard of care for the insurance industry.

Defendants agree that no Missouri cases have addressed this precise contention[2] but point out that a majority of courts which have addressed the issue have rejected the concept that insurance companies or their agents have any general obligation to advise potential customers with respect to their specific insurance needs or the availability of optional coverage. *See, e.g., Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343, 345–47 (1990) (collecting cases).

■ The question of duty presents an issue of law and when a court resolves a question of duty it is essentially making a policy determination. *Bunker v. Ass'n of Mo. Elec. Co-op.,* 839 S.W.2d 608, 611 (Mo. App.1992). In this particular instance, we find that the public policy considerations identified in the numerous cases rejecting the duty McCarthy hypothesizes weigh heavily against the imposition of any liability against insurance companies and their agents for failing to advise of underinsured motorist coverage.

■ First, imposing liability on insurers and their agents "would remove any burden from the insured to take care of his own financial needs and expectations in entering the marketplace and choosing from among the competitive products available." *Dubreuil v. Allstate Ins. Co.,* 511 A.2d 300, 302 (R.I.1986) (quoting *Gibson v. Government Employees Ins. Co.,* 162 Cal.App.3d 441, 451–52, 208 Cal.Rptr. 511, 518 (1984)).

Second, imposing such a duty would transform insurance companies from a competitive marketplace industry "into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense." *Id.*

Third, insureds know their personal assets and abilities to pay better than an insurance agent. Therefore, it should be their responsibility to advise the agent of the insurance they want, including the limits of any policy protection they purchase. *Suter v. Virgil R. Lee & Son, Inc.,* 51 Wash.App. 524, 754 P.2d 155, 157 (1988) (citing *Jones v. Grewe,* 189 Cal.App.3d 950, 234 Cal.Rptr. 717, 721 (1987)).

Fourth, imposing such liability on the insurance industry would subject insurance companies to liability for failing to advise their own customers of every possible insurance option available through the company or

---

**2.** Defendants correctly point out, however, that *Barnes v. Metropolitan Life Ins. Co., supra,* is at least persuasive authority for their position that the duty imposed on insurance agents in Missouri is limited to the exercise of due care in procuring coverages requested by their customers. In *Barnes,* plaintiffs alleged that an agent of Metropolitan recommended that plaintiffs take advantage of the automatic loan provisions of another company's policy in order to afford the premiums on a Metropolitan policy but failed to apprise the plaintiffs that exercise of such automatic loan provisions would diminish the cash value and ultimately terminate the other company's policy. We held such allegations insufficient to state a claim on agency principles or a claim for negligence in procuring insurance and rejected the contention that the agent's recommendations were sufficient to establish any duty toward plaintiffs. 612 S.W.2d at 788.

even, possibly, a better package of insurance offered by a competitor. *Nelson,* 456 N.W.2d at 346; *see also Polski v. Powers,* 221 Neb. 361, 377 N.W.2d 106, 108 (1985); *Blonsky v. Allstate Ins. Co.,* 128 Misc.2d 981, 491 N.Y.S.2d 895, 897–98 (N.Y.Sup.Ct.1985).

Fifth, by creating such a duty insureds would have the opportunity to seek coverage for a loss after it occurred merely by asserting that they would have bought additional coverage if it had been offered. *Nelson,* 456 N.W.2d at 346. This turns the entire theory of insurance on its ear as individuals, in theory, take an "intellectual gamble" when purchasing insurance as they weigh the expense of insurance versus the amount of coverage that they purchase. Allowing insureds to seek coverage, post-occurrence, allows them to completely circumvent this risk. This is precisely what McCarthy is attempting to do in this case.

Finally, in many states, as in Missouri, courts have recognized that the determination of the types of insurance coverage which must be offered by insurance companies is increasingly a subject of legislation. *Id.* at 346–47. Currently, Missouri's Motor Vehicle Financial Responsibility Law only requires liability and *uninsured* motorist coverage. *See* §§ 303.010–.370, 379.203 RSMo 1986 & Supp.1993. The legislature has not seen fit to require underinsured motorist coverage or to impose any requirement on insurance companies or their agents to offer or explain other optional coverages. Given the increasingly pervasive scope of legislative activity in this area, we find it inappropriate to impose additional requirements by judicial fiat.

■ As McCarthy points out, a few courts have expressly or implicitly imposed a duty on insurance agents or insurance brokers to advise clients of the availability of optional coverages. *See, e.g., Dimeo v. Burns, Brooks & McNeil,* 504 A.2d 557, 558–59 (Conn.App.1986); *Sobotor v. Prudential Property & Casualty Ins. Co.,* 200 N.J.Super. 333, 491 A.2d 737, 739–42 (A.D.1984); *Louwagie v. State Farm Fire & Casualty Co.,* 397 N.W.2d 567, 569–70 (Minn.App.1986); *Durham v. McFarland, Gay & Clay, Inc.,* 527 So.2d 403, 407 (La.App.1988). Although Defendants correctly distinguish some of these cases on the basis of applicable statutory provisions, type of insurance involved or the specific undertaking of the agent or broker involved, we find these authorities unpersuasive principally because they fail to address the policy considerations identified above. Based on those policy considerations, we hold that insurance agents in Missouri have no general duty to advise potential customers of optional coverages that may be available. We further find the allegations of the petition insufficient to support a determination that Smith was McCarthy's agent or in breach of any duty toward her as her agent.

■ Alternatively, McCarthy contends that the allegations of the petition are sufficient to establish that Smith was her fiduciary and that his failure to apprise her of the availability of underinsured motorist coverage constituted a breach of fiduciary duty. As support for this contention, McCarthy points to her allegations that she had relied exclusively on Smith for some time for all of her personal insurance consultation and advice and that, as a result, a "special relationship and repose" existed between them.

These allegations are insufficient to establish a fiduciary relationship as a matter of law because they assert no conduct or undertaking by Smith which would justify the degree of trust and confidence required to support imposition of fiduciary obligations. Although McCarthy may well have voluntarily opted to make Smith her exclusive source of information and advice on insurance matters, there is no allegation of undue influence or other conduct on Smith's part which would have prevented her from obtaining information elsewhere. As stated in *Masoner v. Bates County Nat. Bank,* 781 S.W.2d 235, 239 (Mo.App.1989), in order for a fiduciary relationship to exist, "there must be evidence of a special trust with respect to the property or business and, stemming therefrom, an exercise of influence which breaks the will power of the person over-influenced." *Id.* (citing *Hedrick v. Hedrick,* 350 Mo. 716, 168 S.W.2d 69, 74 (1943)).

■ Similarly, Black's Law Dictionary defines a fiduciary as one who has a duty,

created by his own undertaking, to act primarily for another's benefit in matters connected with such an undertaking. *Black's Law Dictionary* 625 (6th Ed.1990). Here, Smith is an insurance salesman for American Family. There is no allegation of any undertaking by Smith to act primarily for McCarthy's benefit. The mere allegation that a client of her own free will relied solely upon an insurance agent for advice and consultation regarding insurance and that a special relationship developed is insufficient to establish a fiduciary relationship. Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance. We find the factual allegations of the petition insufficient to support a determination that Smith owed any fiduciary duty to McCarthy.

Accordingly, the trial court did not err in dismissing McCarthy's third party petition for failure to state a claim upon which relief can be granted. Judgment affirmed.

CRANE, P.J., and KAROHL, J., concur.