**John & Sharon BLEVINS, Appellants,**

v.

**STATE FARM FIRE & CASUALTY COMPANY and David Vaughn, Respondents.**

**No. WD 53980.**

Missouri Court of Appeals, Western District.

Submitted Oct. 8, 1997.

Decided Feb. 24, 1998.

Jeffrey L. Wagoner, Kansas City, for appellants.

Michael E. McCausland, Kansas City, for respondents.

Before ULRICH, C.J., P.J., and SMART and ELLIS, JJ.

PER CURIAM:

John and Sharon Blevins appeal the trial court's order granting summary judgment to State Farm Fire & Casualty Company ("State Farm") and to David Vaughn. The

Blevinses contend that the trial court erred in granting summary judgment to State Farm because the language in their homeowner's policy was unambiguous and covered automobile parts against loss due to theft. The Blevinses also argue that the court erred in denying them damages under § 375.420, RSMo 1994, which allows damages for an insurer's vexatious refusal to pay. The Blevinses also challenge the trial court's grant of summary judgment to David Vaughn, an agent for State Farm, because the facts were not stipulated to and not fully developed at the trial level. Affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

The Blevinses purchased homeowner's insurance from State Farm through its agent, David Vaughn. On November 15, 1995, there was a burglary and theft at the Blevinses' home. Numerous items were stolen. They filed a claim with State Farm, which compensated the Blevinses for many of the items. However, State Farm denied coverage, under an exclusion in the policy, on the following items which John Blevins had used in his hobby of car racing: tires, wheels, two axles, fuel pump, carburetor, drive chain, shock absorbers, gears, and other miscellaneous automobile parts. State Farm also denied coverage on a chassis belonging to Mr. Blevins. In denying coverage, State Farm relied upon the following policy exclusion:

2. **Property not covered.** We do not cover:

\* \* \* \*

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) Used solely to service the **insured location;** or

(2) designed for assisting the handicapped. . . .

The Blevinses brought an action against both State Farm and Mr. Vaughn. In their suit against State Farm they contend that State Farm breached its contract of insurance. They also contend that State Farm

vexatiously refused to pay their claim. In their suit against Mr. Vaughn, the Blevinses contend that he was negligent in failing to inform them that they needed additional insurance to cover the property used for car racing. Both State Farm and Mr. Vaughn moved for summary judgment. The motion for summary judgment contained a joint stipulation of uncontroverted facts, which stated:

1. Plaintiffs and State Farm entered into a contract for insurance coverage of Plaintiff's residence and personal property, which was subject to certain exclusions and coverage limitations.

1.[sic] Plaintiffs suffered a loss of certain items of their personal property due to theft on November 14, 1995.

2. The policy in effect at the time of this theft was State Farm Policy 25–E4–6882–8 ("Policy").

3. Specifically, the disputed items for coverage are:

    a. tires, wheels, two axles, fuel pump, carburetor, drive chain, shock absorbers, gears, and other miscellaneous auto parts (the "parts"), and

    b. a chassis without an engine or any other means of propulsion.

4. A chassis is defined as the frame, wheels, and machinery of a motor vehicle on which the body is supported.

5. A chassis is an essential component of any vehicle.

6. Tires are essential components of any vehicle.

7. Wheels are essential components of any vehicle.

8. An axle is an essential component of any vehicle.

9. The parts were not attached to the chassis at the time of the theft.

10. The parts were stored on a trailer at the time of the theft and were spares for the chassis.

11. The chassis had four (4) wheels, four (4) tires, and two (2) axles at the time of the theft.

13.[sic]All items were purchased for use in conjunction with the hobby of racing; however, not all items were actually used by John Blevins in his hobby.

14. David Vaughn was the State Farm agent who sold the policy of insurance to the Plaintiffs.

The trial court granted the motion for summary judgment. The Blevinses appeal.

## STANDARD OF REVIEW

Appellate review of summary judgments is essentially a *de novo* review. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). The record is viewed in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party moving for summary judgment has the burden of establishing that it is entitled to judgment as a matter of law. *Id.* at 382. Evidence in the record that presents a genuine issue of material fact will defeat a movant's right to summary judgment. *Id.* A genuine issue is one that "implies that the issue, or dispute, must be a real and substantial one— one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. The dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382. If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, it will not be set aside on review. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995). Because contract construction is generally a matter of law, summary judgment is appropriate where there are no factual issues left to be determined and where the meaning of the contract is so clear that it can be ascertained from the four corners of the document. *KCRE, Inc. v. Robb*, 897 S.W.2d 232, 233 (Mo.App.1995).

## BREACH OF CONTRACT

In Point I, the Blevinses claim that the trial court erred in finding that the items stolen were excluded from coverage under the homeowner's policy issued by State Farm. The Blevinses argue that the language of the policy was unambiguous and the trial court's construction of the contract, against its plain meaning, leads to contradictions within the policy, specifically with the policy definition of "motor vehicle." Essentially,

the Blevinses' argument is that because the rolling chassis that was stolen did not have an engine or a motor when it was stolen, it does not meet the definition of property excluded from the homeowner's policy. In addition, because the spare parts were not attached to the rolling chassis, they also were covered by the policy. State Farm agrees that the language in the policy was not ambiguous. It claims, however, that the plain meaning of the exclusion precludes coverage for the items stolen from the Blevinses' property.

Application of the rules of construction of insurance contracts requires that the language used in such contracts be given its plain meaning. *Lutsky v. Blue Cross Hosp. Service, Inc.*, 695 S.W.2d 870, 879 (Mo. banc 1985). The key to the interpretation of the contract is whether the contract language is ambiguous or unambiguous. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). An ambiguity is said to exist where the meaning of the words used in the contract is duplicitous, indistinct or uncertain. *Id.* Stated another way, ambiguity in language is found where that language could be reasonably construed in different ways. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

■ A court is forbidden to create an ambiguity that would distort the language of an unambiguous policy. *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991). This court does not have the power to rewrite an insurance contract where the language of the policy is clear and not ambiguous. *Madison Block Pharmacy, Inc. v. United States Fidelity & Guaranty Co.*, 620 S.W.2d at 346. Where there is no ambiguity in the contract, it is our duty to enforce it as written. *Id.*

■ The policy exclusion at issue states:

2. **Property not covered.** We do not cover:

\* \* \* \*

   c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) Used solely to service the **insured location**; or

(2) designed for assisting the handicapped. . . .

State Farm claims that the language of the exclusion is clear and unambiguous and that it excludes coverage for the parts in question. We agree. Other courts, in interpreting this clause, have also concluded that the language is clear and unambiguous. In *Wilhite v. State Farm Fire & Cas. Ins. Co.*, 541 So.2d 22 (Ala.Civ.App.1989), an off-road recreational vehicle was stolen from the home of the insured. Wilhite filed suit against State Farm when State Farm denied coverage based upon the same exclusion that is before this court in the instant case. The court found that the language of the policy was "plain and unambiguous" and the exclusion clause itself "straightforward and explicit." *Id.* at 23. Similarly, in *Watamura v. State Farm Fire & Cas. Co.*, 206 Cal.App.3d 369, 253 Cal.Rptr. 555 (1988), the court found that a "sandrail vehicle" was not covered by the insured's homeowner's policy. *Id.* at 556. The court held that the terms of the exclusion were clear and unambiguous. *Id.*

The *Wilhite* and *Watamura* courts rejected the argument that the definition of "motor vehicle" in the definitional portion of the policy created an ambiguity. The Blevinses attempt a similar argument here. In the homeowner's policy, "motor vehicle" is defined as: "a motorized land vehicle designed for travel on public roads and subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle." The Blevinses contend that the chassis was in dead storage and thus not a "motor vehicle." They claim that State Farm's interpretation of the exclusion in the policy is in conflict with the definitional section of the policy. As was the case in *Watamura*, the boldface term "motor vehicle" is not used in the exclusion clause at issue. *Watamura*, 253 Cal.Rptr. at 556. The *Wilhite* court also found that the definition of "motor vehicle" was "not relevant or necessary in determining the meaning of 'any engine or motor propelled vehicle ... designed for movement on land' as used in the exclusion clause." *Wilhite*, 541 So.2d at 23–

24. In this case, we are not called upon to determine the meaning of "motor vehicle" under the terms of the policy. The exclusion clause does not employ that term. Instead, what must be determined is whether the chassis and parts were covered under the clear and unambiguous language of the exclusion.

All of the stolen property, the chassis, tires, wheels, axles, fuel pump, carburetor, drive chain, shock absorbers, gears and other miscellaneous parts, are parts of a motor or engine propelled vehicle designed for movement on land. In the joint stipulation of facts entered into by the parties, a chassis is defined as "the frame, wheels, and machinery of a motor vehicle on which the body is supported." It was admitted that the chassis, tires, wheels, and axles are all essential components of any vehicle. It is immaterial, under the policy language, whether the chassis had an engine in it or whether the parts were attached or not attached to the chassis. All are parts of a vehicle or machine designed for movement on land and were, in fact, intended to be used as such. The joint stipulation of facts also admitted that items at issue were all purchased by Mr. Blevins for his hobby of racing. The stolen items had but one purpose—they were parts used on a motor or engine propelled vehicle. The joint stipulation suggests no other purpose for the stolen items.

The Blevinses discuss two cases that they claim are on point to support their position. In *Purdy v. Tennessee Farmers Mut. Ins. Co.*, 586 S.W.2d 128 (Tenn.App.1979) the court examined whether a homeowner's policy covered the theft loss of four tires and wheels. The exclusion clause in *Purdy* is significantly different from the clause at issue in the instant case. In *Purdy* the policy contained language purporting to cover "personal property *usual or incidental to the occupancy of the premises as a dwelling.*" *Id.* at 129. The clause excluded *"motorized vehicles,* except such vehicles pertaining to the service of the premises and not licensed for road use." *Id.* The court held that the language of the policy was ambiguous and that the use of the words "usual" and "incidental" afforded broad coverage. *Id.* at 130.

Additionally, the clause did not mention parts. The Blevinses' reliance on *Hardware Mutual Cas. Co. v. Buck's Tri–State Irrigation Engine Co., Inc.*, 500 S.W.2d 897 (Tex. Civ.App.1973), is also misplaced. The policy in *Hardware Mutual* was not a homeowner's policy, but a merchant's property policy. Nor was the exclusion clause reviewed similar to the one that we are reviewing.

In view of our ruling on Point I affirming the trial court's decision in favor of State Farm, it is unnecessary to address the Blevin's contention under § 375.420, the vexatious refusal to pay statute.

## INSURANCE AGENT LIABILITY

In Point III, the Blevinses argue that the trial court erred in granting summary judgment to David Vaughn because the facts had not been stipulated and were not fully developed at the trial court level. In their petition, the Blevinses assert that David Vaughn was negligent in failing to advise them that an additional rider or policy was necessary to protect them from the loss of their sport racing property due to theft. They claim that Mr. Vaughn affirmatively represented that they were covered under the existing policy.

First, we examine the allegation that Mr. Vaughn was negligent in failing to advise them that they were not covered under their existing policy. In order to maintain an action for negligence, the Blevinses must establish: (1) that Mr. Vaughn had a duty to them; (2) that Mr. Vaughn failed to perform that duty; and (3) that Mr. Vaughn's breach was the proximate cause of their injury. *See Hecker v. Missouri Property Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995). An insurance agent may be liable for a negligent breach of his duties to his clients in limited circumstances. For instance, where an agent, working for a commission, undertakes to obtain insurance for a client, he owes a duty to the client to notify him if he fails to obtain such insurance. *Id.* The duty is not continuing, however. It ceases when the policy is executed and delivered to the insured. *Id.*

Missouri does not recognize a duty on the part of an insurance agent to advise customers as to their particular insurance needs or as to the availability of optional coverage. *Farmers Ins. Co., Inc. v. McCarthy,* 871 S.W.2d 82, 85 (Mo.App.1994). In *McCarthy,* the plaintiff argued that her insurance agent had an affirmative duty to advise her concerning underinsured motorist coverage. In rejecting this argument, the court identified several policy reasons for refusing to hold the agent liable. Holding the agent or company liable: (1) would remove the responsibility from the insured to look after his own financial needs; (2) would change insurance companies into financial counselors or guardians of the insured; (3) would open companies to liability for failing to advise of every conceivable option, even those offered by competitors; and (4) would allow insureds to circumvent risk by allowing the opportunity for coverage after a loss by an allegation that the insureds would have sought additional coverage if it were offered. *Id.* at 85–86. The court also noted that the insureds know more about their personal assets and ability to pay than does their insurance agent. *Id.* at 85. It follows, therefore, that it is the responsibility of those seeking insurance to advise an agent as to what they want. *Id.*

Next, we consider the allegation that Mr. Vaughn affirmatively represented to the Blevinses that they had coverage as to the sport racing equipment. This averment seems to state a cause of action. However, their response to the summary judgment motion reveals that the coverage referred to was coverage under an automobile liability policy where the car and its trailer were under tow. Theft insurance was not discussed. Therefore, it is apparent that Mr. Vaughn made no representation of coverage concerning the sport racing equipment under the homeowners' policy. We will, accordingly, consider the petition amended in light of the more specific assertions contained in the Blevinses' formal response to the motion. As impliedly amended, the allegation fails to state a cause of action, for the reasons discussed above. Mr. Vaughn had no legal duty to advise the Blevinses concerning their coverage, or lack thereof, as to theft. He also had no duty to advise as to optional coverage. *See McCarthy,* 871 S.W.2d at 85. Accordingly, Point III is denied.

Judgment is affirmed.