**John L. JONES, Plaintiff–Appellant,**

v.

**Debra KENNEDY, Defendant–Respondent.**

**Nos. 25161, 25239.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 2003.

R. Frederick Walters and Kyle N. Roehler, Walters, Bender, Strohbehn & Vaughan, P.C., Kansas City, MO, for Appellant.

Joseph P. Winget and William C. Robinson, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, MO, for Respondent.

JAMES K. PREWITT, Presiding Judge.

In this consolidated appeal, John L. Jones ("Appellant") appeals from the trial court's docket entry and subsequent judgment granting Debra Kennedy's ("Respondent") motion to dismiss Appellant's first amended petition for failure to state a claim for which relief can be granted.

Appeal no. 25161 represents the appeal from the trial court's docket entry signify-ing the grant of Respondent's motion to dismiss and appeal no. 25239 represents the appeal from the trial court's judgment entered in accordance with that docket entry. The judgment is included in the record; however, the purported docket entry is not.

We have a duty to *sua sponte* determine whether we have jurisdiction over an appeal and if we lack jurisdiction, the appeal should be dismissed. *Nuspl v. Pinkston,* 84 S.W.3d 131, 132 (Mo.App. 2002). An aggrieved party may only appeal from a final judgment of the trial court. *Id.* When a trial court undertakes to dismiss a petition for failure to state a claim upon which relief can be granted, the court's order must meet the requirements of Rule 74.01(a), which states that a judgment is considered entered when it is (1) a writing, (2) signed by the judge, (3) that is denominated as a judgment, and (4) filed. *Lowery v. Air Support Int'l, Inc.,* 971 S.W.2d 323, 324 (Mo.App.1998). A docket entry may be considered a final judgment, but it must be clear from the writing in the entry that it is a judgment and that it meets the above requirements. *Nuspl,* 84 S.W.3d at 132.

Without the docket entry, we are unable to determine whether it meets the requirement of a final judgment and thus, this Court lacks jurisdiction with respect to appeal no. 25161 and must dismiss that appeal. We do not encounter the same difficulty with appeal no. 25239, as the final judgment is before us; thus, we will proceed to review that appeal on its merits.

Appellant sued Respondent under theories of negligence and breach of fiduciary duty based on Respondent's alleged failure to procure, as well as inform Appellant as to the availability and advisability of, underinsured motorist coverage in response

to Appellant's request for "full coverage" on his vehicle.

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we determine whether the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention,* 918 S.W.2d 805, 810 (Mo.App.1996). All of Appellant's averments are taken as true and no attempt is made to weigh the facts alleged as to whether they are credible or persuasive. *Id.* We will reverse the trial court's order only if the facts alleged in the petition would, upon proof, entitle Appellant to relief. *Bradley v. Ray,* 904 S.W.2d 302, 314 (Mo.App.1995). If facts essential to the recovery are not pled, the dismissal will be affirmed. *Id.* The facts outlined below are cast in a manner consistent with these principles.

Sometime prior to August 1996, Appellant sought to procure insurance coverage on his Chevrolet S–10 pick-up truck from Shelter Mutual Insurance Company ("Shelter"). Respondent acted as Appellant's agent in that regard and either received or expected to receive compensation for procuring and advising Appellant on liability coverage for his vehicle. Respondent held herself out as an expert in automobile insurance, and Appellant relied upon her expertise to advise him on insurance. Appellant requested "full coverage" for his vehicle and a Shelter policy was issued. The policy did not include underinsured motorist coverage.[1]

On November 6, 1998, while driving his vehicle, Appellant was involved in a collision with a vehicle driven by Connie Short.

As a result of the collision and the injuries he suffered, Appellant filed a negligence cause of action against Short.

In September 2001, Appellant entered into an agreement with Short and her insurance carrier that allowed Appellant to obtain a judgment of $200,000, provided he would agree to collect no more than the policy limits available under Short's automobile liability policy. Short's policy limits for bodily injury were $25,000 per person and $50,000 per accident. Appellant's Shelter policy was in full force and effect at the time of the collision.

In his first amended petition for damages, Appellant alleged in count I that Respondent breached her duty to exercise a reasonable degree of care by failing to procure, as well as inform Appellant regarding the availability and advisability of, underinsured motorist coverage. In his second count, Appellant alleged that Respondent breached her fiduciary duty based on the same failures in action.

Respondent filed a motion to dismiss Appellant's first amended petition for failure to state a claim for which relief can be granted. Following a hearing on the matter, the trial court sustained the motion, finding that Respondent "owed no legal duty to [Appellant] to advise him as to the existence or advisability of optional coverages." This appeal followed.

Appellant raises two points on appeal, both of which allege that the trial court erred in granting Respondent's motion to dismiss because she owed Appellant a duty of reasonable care to inform him of the availability and advisability of underinsured motorist coverage. The distinction between the two points is that in Point I Appellant argues that the duty of reason-

---

1. Underinsured motorist coverage provides protection and compensation, up to the limits of the coverage, in situations where a tortfea-

sor's automobile insurance policy limits are insufficient to cover the loss. *Tegtmeyer v. Snellen,* 791 S.W.2d 737, 740 (Mo.App.1990).

able care was owed to him because Respondent held herself out as expert and as an insurance agent and she, therefore, should be held to a professional standard of care. In Point II, Appellant argues that Respondent owed him a duty of reasonable care because a principal-agent relationship existed between them. We will address the points in order.

 A professional standard of care is a professional duty unique to the profession under consideration. *See Gray v. Ward,* 929 S.W.2d 774, 785 (Mo.App.1996). This is distinguished from the standard of care for an "ordinary person," and we borrow language from a Minnesota case to make that distinction. *See Blatz v. Allina Health Sys.,* 622 N.W.2d 376, 384 (Minn. Ct.App.2001). An ordinary person has a duty to act as a reasonable person would act under the same or similar circumstances. *Id.* Alternatively, a person providing professional services is under a duty to exercise such care, skill, and diligence as persons in that profession ordinarily exercise under like circumstances. *Id.*

 All parties agree, and we do as well, that insurance agents are held to a professional standard of care. As to what is, or is not, included within that standard of care, we note that Missouri does not recognize a duty on the part of an insurance agent to advise customers as to their particular insurance needs or as to the availability of optional coverage. *Blevins v. State Farm Fire & Cas. Co.,* 961 S.W.2d 946, 951 (Mo.App.1998).

In a case in which an appellant urged the Eastern District of this Court to impose a duty on insurance agents to inform potential customers of the availability of optional coverage, specifically underinsured motorist coverage, as part of the generalized standard of care for the insurance industry, the Court declined. *Farmers Ins. Co., Inc. v. McCarthy,* 871 S.W.2d 82, 85–86 (Mo.App.1994). The Court stated specific policy reasons, including that the legislature neither requires motorists to carry underinsured coverage nor insurance companies/agents to offer or explain such available coverage. *Id.* at 86. The Court also analyzed some of the cases Appellant cites from other jurisdictions that have imposed such a duty, but found that they were unpersuasive because they failed to address those policy concerns.[2] *Id.*

Appellant urges us not to follow the opinions of the Eastern District in *Blevins* and *Farmers Ins. Co., Inc.,* but we find them well reasoned and decline his request. We also do not find that Appellant's request for "full coverage" changes the analysis. *See Clifton v. Allstate Ins. Co.,* 995 S.W.2d 38, 40 (Mo.App.1999); *Banes v. Martin,* 965 S.W.2d 383, 385 (Mo. App.1998).

In *Farmers Ins. Co., Inc.,* the Court discussed Missouri's Motor Vehicle Financial Responsibility Law and how it only required liability and uninsured motorist coverage. 871 S.W.2d at 86. Those are

---

**2.** In addition to the legislative policy concern noted, the Court cited the following policy reasons for its decision not to impose such a duty: reluctance to remove the burden on the insured to attend to his/her own financial needs and expectations; potential to transform insurance companies from a competitive marketplace to financial counselors or guardians; knowledge of each insured regarding his or her own personal assets and ability to pay that far exceeds that of the agent; change would subject insurance agents to liability for failing to advise regarding every possible option, including that of competing companies; and insureds could then seek coverage for a loss after it occurred by merely alleging that they would have purchased the necessary coverage if it had been offered. *Farmers Ins. Co., Inc.,* 871 S.W.2d at 85–86.

the same minimum state requirements in effect today and, more importantly, when Appellant's Shelter policy was issued and in force. *See* §§ 303.010–.370 and 379.203, RSMo 1994. Similar to the reasoning in *Farmers Ins. Co., Inc.,* as the legislature has not seen fit to expand the scope of coverage required by law or impose a requirement on insurance companies/agents to offer or explain additional options, we find it inappropriate to expand the definition of full coverage by judicial fiat to include the available optional coverage of underinsured motorist coverage. *See* 871 S.W.2d at 86.

Any benefit of including that particular optional coverage under the umbrella of full coverage is outweighed by the potential difficulties associated with determining which of the many available optional coverages and monetary limits should be considered by an insurance agent as falling under that term. Point I is denied.

In Point II, Appellant argues that the trial court erred in granting the motion to dismiss because Respondent owed Appellant a duty of reasonable care to inform him of the availability and advisability of underinsured motorist coverage in that a principal-agent relationship existed between them.

▮▮▮▮ The legal relationship between an agent and a principal is generally recognized as being fiduciary in nature. *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 394 (Mo.App.1998). Specifically, an insurance agent who seeks to procure insurance for a party, with a view toward earning a commission, becomes that party's agent. *Hecker v. Missouri Prop. Ins. Placement Facility,* 891 S.W.2d 813, 816 (Mo.banc 1995). Following our standard of review outlined earlier in this opinion, we assume that a principal-agent relationship existed between Appellant and Respondent and that the relationship was therefore fiduciary in nature. *Preferred Physicians Mut. Mgmt. Group,* 918 S.W.2d at 810.

Appellant directs our attention back to *Farmers Ins. Co., Inc.,* in which the appellate court found that the allegations in the petition were insufficient to establish a fiduciary relationship. 871 S.W.2d at 86. There, the Court found that there was no allegation that the insurance agent undertook the responsibility to act primarily for the insured's benefit. *Id.*

However, even assuming here that Appellant pled sufficient facts to support a determination that Respondent owed him a fiduciary duty, we must also consider the extent of any such duty and whether the facts alleged in the petition would, upon proof, entitle Appellant to relief. *Bradley,* 904 S.W.2d at 314. If not, the dismissal will be affirmed. *Id.*

As we have determined in the discussion of Point I that there was no duty on the part of Respondent to inform Appellant of the availability and advisability of underinsured motorist coverage, it follows that Respondent did not breach any duty to Appellant. Therefore, regardless of the existence of a fiduciary relationship, the facts alleged in Appellant's first amended petition, if proved, would not entitle him to relief. Point II is denied.

The judgment is affirmed.

PARRISH and SHRUM, JJ., concur.