Anthony and Theresa MANZELLA,
Appellants,

v.

GILBERT–MAGILL COMPANY,
Respondent.

No. WD 53399.

Missouri Court of Appeals,
Western District.

Feb. 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1998.

Application for Transfer Denied May 26, 1998.

Daniel T. Defeo, David M. Mayer, Monsees, Miller & Defeo, Kansas City, for appellants.

Steven G. Piland, Overland Park, KS, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Anthony and Theresa Manzella appeal from the trial court's order granting Gilbert–Magill Company's motion for judgment notwithstanding the verdict. The Manzellas obtained a jury verdict in their favor on their action against Gilbert–Magill for negligence resulting from its insurance agent's failure to procure adequate insurance coverage for the Manzellas' business. On appeal, the Manzellas claim that the trial court erred in overturning the jury's verdict because there were material issues as to whether Gilbert–Ma-

gill's agent breached a duty of reasonable care to the Manzellas by failing to procure adequate insurance for their losses. The Manzellas also contend that the trial court erred in its order because Gilbert–Magill failed to properly request judgment notwithstanding the verdict by not filing a written motion for a directed verdict at the close of all the evidence.

The judgment of the trial court is affirmed.

### Factual and Procedural Background

In early 1992, the Manzellas decided to open an Italian delicatessen at 13003 State Line Road in Kansas City, Missouri. Before they entered this venture, the Manzellas applied for a Small Business Administration (SBA) loan. Because they needed to include an estimate of insurance costs in the application, they contacted their insurance agent, Bill Johnson, who had provided them with homeowners and automobile insurance in the past. Mr. Manzella informed Mr. Johnson, an employee of Gilbert–Magill Company, that he and his wife wanted to open a delicatessen and described the business to Mr. Johnson in general. Mr. Manzella told Mr. Johnson that he "needed some idea of an insurance cost" for the proposed business. Mr. Johnson asked Mr. Manzella about the size of the property and was told that the lease was for approximately 2,500 to 3,000 square feet. The Manzella's SBA application indicated that they intended to carry contents coverage of $50,000, at the cost Mr. Johnson had estimated of $2,700.[1]

When the opening of the Manzella's delicatessen was imminent, Mr. Manzella contacted Mr. Johnson to purchase insurance coverage. Mr. Manzella asked Mr. Johnson to give him the coverage he needed for the delicatessen. Mr. Manzella never told Mr. Johnson how much coverage he wanted for the business because he believed that Mr. Johnson "was supposed to advise [him] on that." Mr. Johnson procured a Hartford Policy for the Manzellas on a 2,000 square foot deli for a premium of $1,048. When that policy was received by the Manzellas, Mr. Manzella and Mr. Johnson reviewed the declarations page

---

**1.** The delicatessen was ultimately financed with a    bank loan, rather than a loan from the SBA.

of the policy over the phone. Mr. Manzella testified that Mr. Johnson told him that the policy contained $300,000 in fire protection coverage for the Manzellas' business. The declarations page of the policy showed, however, that the $300,000 was fire *liability* coverage, while the personal property coverage on contents was $35,000 for any loss by fire.

In August of 1993, Mr. Manzella learned that the deductible on the Hartford Policy was going to increase due to a theft loss at the deli and he decided to shop around for new insurance. He met with one of his customers, Dick Fuchs, who represented the Pro Line Insurance Company. Mr. Fuchs reviewed Mr. Manzella's Hartford policy, inspected the premises, and expressed his willingness to write the policy for coverage identical to the Hartford policy at a cost acceptable to Mr. Manzella. Mr. Manzella then contacted Mr. Johnson and asked him if he could match Mr. Fuchs' offer. Several days later, Mr. Johnson notified Mr. Manzella that he could "match it to the T" with a policy from Ohio Casualty. Mr. Manzella decided to accept Mr. Johnson's offer of a policy with Ohio Casualty because he thought it was advantageous to have his home, automobile and business insurance with the same agent. Shortly thereafter, Ohio Casualty issued an Ohio Casualty Business Owner's Policy to the Manzellas for their delicatessen. The policy contained $40,000 in contents coverage and $5,000 spoilage coverage.

On May 30, 1994, a fire devastated the Manzellas' delicatessen. The Manzellas suffered a loss of the operation of the business, equipment, furnishings, and most of the food in the delicatessen. According to an exhibit filed by the Manzellas at trial, the fire caused $151,050.59 damage to durable goods and $9,700.66 in damage to non-durable goods. After the fire, Mr. Manzella telephoned Gilbert–Magill to inform them that he "had a problem." Mr. Manzella testified that an

unidentified Gilbert–Magill employee told him that he only had $50,000 in coverage for the loss of fixtures, equipment, inventory and business interruption. When Mr. Manzella related this conversation to Mr. Johnson, who no longer worked for Gilbert–Magill, Mr. Johnson indicated that the information was wrong and that he would take care of it. However, when Mr. Johnson called Mr. Manzella back, he told Mr. Manzella that he only had $50,000 in total coverage.[2]

Subsequently, the Manzellas brought a negligence suit against Gilbert–Magill for Mr. Johnson's conduct as their agent. In their action, the Manzellas claimed that Mr. Johnson negligently failed to advise them of the types of insurance coverage required and the amounts of coverage necessary. The Manzellas also claimed that Gilbert–Magill negligently misrepresented to the Manzellas the amount of coverage required and negligently failed to inspect the business to determine the appropriate amount of coverage.[3] As a result of this negligence, the Manzellas claimed that they suffered the loss of their business operations, income and assets as well as their creditworthiness and goodwill.

At trial on their claim, the Manzellas presented the testimony of several witnesses, including Mr. Manzella and his wife, Theresa. Mr. Manzella testified that he thought the Ohio Casualty policy procured for him by Mr. Johnson provided him with $300,000 in contents coverage for fire, as did the original Hartford policy. He also testified that he left everything in Mr. Johnson's control and depended on him to provide the proper amount of insurance. Furthermore, the Manzellas presented evidence that the $40,000 policy procured by Mr. Johnson did not meet Gilbert–Magill's restaurant policy coverage guidelines, which required 100% coverage and coverage of $40 per square foot of restaurant area. After orally moving for a directed verdict, Gilbert–Magill presented evidence that the Manzellas' deli did not

---

2. Mr. Manzella testified that he was advised after the fire that his coverage was $50,000. Since the record on appeal does not include the Ohio Casualty policy issued to the Manzellas, this court cannot determine if the $50,000 figure was in error or if there was coverage in addition to the $40,000 for contents and the $5,000 for spoilage.

3. The Manzellas did not assert a claim for any misrepresentation made by Mr. Johnson when he and Mr. Manzella were reviewing the Hartford policy that the Manzellas' fire protection coverage was $300,000.

qualify for Gilbert–Magill's restaurant policy because it had not been in business for the requisite two years and that $40,000 in contents coverage was sufficient for the Manzellas' small delicatessen. Gilbert–Magill then moved for a directed verdict at the close of all the evidence, which was denied.

The jury returned a verdict in favor of the Manzellas in the amount of $85,000, assessing twenty-five percent of the fault to Gilbert–Magill and seventy-five percent of the fault to the Manzellas. Gilbert–Magill moved for judgment notwithstanding the verdict, claiming that, as a matter of law, Mr. Johnson did not owe the Manzellas any legal duty regarding the amount of coverage. The trial court sustained Gilbert–Magill's motion for judgment notwithstanding the verdict, noting that Mr. Manzella never requested a specific amount of coverage and left that decision in the hands of Mr. Johnson. Since Missouri law does not impose a duty on an insurance agent to appraise and evaluate customers' businesses, the trial court held that Gilbert–Magill was not negligent with respect to the Manzellas' insurance coverage. The Manzellas filed a timely appeal in this court.

## Motion to Dismiss

■ Gilbert-Magill filed a motion to dismiss the Manzellas' appeal. In its motion, Gilbert–Magill contends that this court should dismiss the Manzellas' appeal because the Manzellas failed to pay the court reporter's fees for preparing the transcript within the time allotted by § 512.050, RSMo Cum. Supp.1996. Section 512.050 provides that no "appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final and all charges due to the court reporter for preparation of the transcript of the record of the trial court are paid within ten days of the filing of the notice of appeal." [4] The Manzellas filed their notice of

appeal on September 26, 1996. Therefore, because the Manzellas failed to request and pay for the transcript fees by October 7, 1996, ten days after the notice of appeal was filed, Gilbert–Magill argues that this court, under § 512.050, should dismiss the appeal. The version of Supreme Court Rule 81.12(c) in effect at the time the Manzellas filed their notice of appeal granted them thirty days after the notice of appeal in which to request the transcript of the proceedings.[5] Rules promulgated by the Supreme Court pursuant to the Missouri Constitution "supersede all statutes and existing court rules inconsistent therewith." Rule 41.02. Furthermore, "if there is a conflict between [the Supreme Court's] rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." *State ex rel. Union Elec. Co. v. Barnes,* 893 S.W.2d 804, 805 (Mo. banc 1995). Rule 81.12(c) addresses the procedure of filing an appeal, therefore, its provisions in effect at the time the appeal was filed control over § 512.050 and the Manzellas had thirty days after filing their notice of appeal, or until October 26, 1996, to order the transcript. *See Specialty Restaurants Corporation v. Gordon R. Gaebler, P.C.,* 956 S.W.2d 391, 397–98 (Mo.App.1997).

The Manzellas filed their request for the trial transcript on October 24, 1996. Since they timely filed their request under the version of Rule 81.12(c) in effect at the time, this court denies Gilbert–Magill's motion to dismiss, and we proceed to the merits of the Manzellas' appeal concerning the propriety of judgment notwithstanding the verdict.

## Standard of Review

When a party contends that the trial court improperly entered judgment notwithstanding the verdict, the issue before this court is whether the plaintiff made a submissible case. *Pikey v. General Acc. Ins. Co. of*

---

**4.** The current version of § 512.050, effective August 28, 1997, provides that after a timely notice of appeal has been filed, the "failure of the appellant to take any of the further steps to secure the review of the judgment or order appealed from does not affect the validity of the appeal...." Therefore, the legislature has now expressed its intention that the requirement concerning payment of court reporter's charges for

preparing the transcript is not jurisdictional in nature.

**5.** Supreme Court Rule 81.12(c) was amended, effective July 1, 1997, to mandate that an appellant order the transcript within ten days after filing the notice of appeal and pay all charges in accordance with § 512.050.

*Amer.*, 922 S.W.2d 777, 780 (Mo.App.1996). On appeal from the trial court's order granting a judgment notwithstanding the verdict, this court views the evidence and inferences drawn therefrom in a light most favorable to the party who obtained the favorable jury verdict. *Id.* This court will affirm the trial court's judgment notwithstanding the verdict "only if there is no room for reasonable minds to differ on the issues and if the trial court's action is supported by at least one of the grounds raised." *Id.*

### Points on Appeal

### Point 1—Negligence

As their first point on appeal, the Manzellas claim that the trial court erred in granting Gilbert–Magill's motion for judgment notwithstanding the verdict because material issues of fact existed concerning whether Gilbert–Magill's agent breached a duty owed to the Manzellas by failing to procure an adequate amount of insurance. They claim that Gilbert–Magill, through the actions of Mr. Johnson, violated its duty to act with reasonable care by failing to obtain the proper amount of insurance for the Manzellas' delicatessen.

■ Under Missouri law, it has long been the rule that an insurance agent or broker who undertakes to procure insurance for another for compensation owes a duty of "reasonable skill, care and diligence" in obtaining the requested insurance. *Zeff Distributing Co. v. Aetna Cas. & Sur. Company*, 389 S.W.2d 789, 795 (Mo.1965). *See also Kelley v. Shelter Mut. Ins. Co.*, 748 S.W.2d 54, 56 (Mo.App.1988); *Barnes v. Metropolitan Life Ins. Co.*, 612 S.W.2d 786, 787 (Mo.App.1981); *Kap-Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.*, 402 S.W.2d 49, 53 (Mo.App.1966). If the insurance agent or broker cannot or does not obtain the requested insurance, the agent or broker has a duty to timely notify the customer. *Barnes*, 612 S.W.2d at 787; *Pittman v. Great American Life Insurance Co.*, 512 S.W.2d 857, 861 (Mo.App.1974). Failure to do so "will render the agent liable to the client for damages and the client, at [the client's] election, may sue the agent either for breach of contract or in tort for negligent breach of the agent's duty to timely notify

the client that the requested insurance was not obtained." *Barnes*, 612 S.W.2d at 787.

■ The Manzellas do not claim that Gilbert–Magill, through its agent, breached its duty to the Manzellas to properly procure the insurance specifically requested by them or its duty to inform them of its inability to obtain a policy with the specific amounts of coverage requested. Instead, the Manzellas assert a claim that Gilbert–Magill had another duty, a duty to advise the Manzellas of the amount of insurance they required to cover reasonably anticipated losses for their deli business, and that Gilbert–Magill negligently breached that duty.

The question of whether a legal duty exists is a question of law for the court to decide. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). Essential to the finding of a duty is "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Bunker v. Ass'n of Mo. Elec. Co-op.*, 839 S.W.2d 608, 611 (Mo.App.1992). When this court is resolving a question concerning a duty, "it is essentially making a policy determination." *Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 85 (Mo.App.1994).

While, no Missouri court has addressed whether an insurance agent or broker owes a customer a duty with respect to the amount of coverage purchased under a policy, the Eastern District of this court recently considered a similar issue. In *McCarthy*, 871 S.W.2d at 84, the issue was whether an insurance company or its agent had an obligation to advise a potential customer with respect to her specific insurance needs or the availability of optional coverage. The plaintiff in *McCarthy* brought an action for breach of fiduciary duty and negligence against an insurance agent who failed to advise her of the availability of underinsured motorist coverage. *Id.* at 83. The plaintiff based her claim on the fact that had she obtained underinsured motorist coverage, she could have gotten additional recovery for injuries she sustained as a result of an automobile accident. *Id.* The plaintiff in *McCarthy* argued that she had a "special relationship" with the defen-

dant agent upon whose advice she had "solely relied" for a number of years. *Id.* at 84.

In deciding that the trial court's dismissal was correct, the court noted that plaintiff had not pleaded facts supporting a characterization that the insurance agent was *her* agent. *Id.* The plaintiff's only allegation concerning agency was her allegation that the insurance agent was at all times the agent of the insurance company and acted within the course and scope of his employment with the insurance company. *Id.* at 84–85. The court found that:

> Although it is true ... that under certain circumstances an insurance agent may serve as the agent of both the insurer and the insurance company, an essential prerequisite to such status is some consensual undertaking by the agent, for at least the prospect of compensation, to act on behalf of the customer as his principal. Where there is such an undertaking, the agent may properly be held to a concomitant duty to act with reasonable care, skill and diligence in performing the duties he has agreed to undertake.

*Id.* at 85 (citations omitted).

The *McCarthy* court then considered whether an agent of a potential insurance customer has a duty to inform of the availability of optional coverage, as plaintiff urged. In reaching its decision that there was no duty, the court weighed several policy factors. First, the court considered that the imposition of liability "would remove any burden from the insured to take care of his own financial needs...." *Id.* (quoting *Dubreuil v. Allstate Ins. Co.*, 511 A.2d 300, 302 (R.I.1986)). Second, the court determined that the imposition of a duty would transform insurance companies into personal financial counselors. *Id.* at 85. As the third factor in its analysis, the *McCarthy* court noted that the insured should be responsible for informing the agent of what coverage is necessary because insureds "know their personal assets and abilities to pay better than an insurance agent." *Id.* Fourth, the court expressed a concern with holding agents liable for failing to inform customers of every available insurance option. *Id.* at 85–86. As the fifth policy factor, the *McCarthy* court noted that

insureds should not be allowed to circumvent the "intellectual gamble" of a decision to purchase insurance by claiming that they would have purchased certain coverage if offered. *Id.* at 86. Finally, the court considered the effect of any legislative action. *Id.* In light of these factors, the *McCarthy* court held that "insurance agents in Missouri have no general duty to advise potential customers of optional coverages that may be available." *Id.*

In *McCarthy*, the court considered its holding in *Barnes*, 612 S.W.2d 786, as persuasive authority for the position "that the duty imposed on insurance agents in Missouri is limited to the exercise of due care in procuring coverages requested by their customers." *McCarthy*, 871 S.W.2d at 85, n. 2. In *Barnes*, the plaintiff brought a negligence action against an insurance company for its agent's failure to inform the plaintiff of the significance of provisions in another insurer's policy already held by the plaintiff. *Barnes*, 612 S.W.2d at 786–87. In affirming the trial court's dismissal of the claim, the Eastern District of this court held that because the plaintiff was not bringing an action based on the agent's failure to procure insurance, there was no duty. *Id.* at 788.

■ Under the *McCarthy* public policy analysis, this court determines that insurance agents or brokers have no general duty to advise an insurance customer of the amount of insurance necessary to cover the customer's needs. Applying the *McCarthy* factors to this case, the imposition of liability would remove the burden on the Manzellas to "take care of [their] own financial needs and expectations" before entering the marketplace to procure insurance coverage. *See McCarthy*, 871 S.W.2d at 85. Imposing a burden on Mr. Johnson and Gilbert–Magill would make them responsible for determining the Manzellas' financial needs and expectations before insuring them.

Second, if a duty were imposed on Gilbert–Magill it would transform the insurance company into the Manzellas' personal financial consultant or guardian. Here, the Manzellas allege that Gilbert–Magill should have determined the appropriate amount of coverage for the Manzellas' business. In order to do

so, Mr. Johnson would have had to conduct an exhaustive analysis of the Manzellas' financial position and that of their business. These are factors which are much better left to the Manzellas to determine.

Third, Mr. Manzella knew his personal assets, as well as the assets of the delicatessen, far more intimately than Mr. Johnson. This being the case, it was Mr. Manzella's responsibility to advise Mr. Johnson what kind of policy he desired as well as the coverage limits of any policy. The Manzellas knew how much they had paid for the equipment, inventory and durable goods of the delicatessen and should logically have known how much the replacement costs of those items would be in case of a fire.

Fourth, were this court to impose a duty upon Gilbert–Magill, the floodgates would be open to suits against insurance agents for failing to advise or inform customers about an infinite number of possibilities, including the appropriate amount of insurance coverage. The duty of an insurance agent or broker and his or her company would become nearly unlimited.

Fifth, recognition of a duty in this case would allow insureds, such as the Manzellas, to assert, after the fact, that had the insurance agent properly determined the amount of coverage necessary, they would have purchased it and avoided the loss. Again, this result would expose the insurance industry to much greater liability and enable individuals to completely circumvent the "intellectual gamble" of deciding how much insurance to purchase in light of the cost of the insurance.[6]

Therefore, based on these policy considerations, this court declines to impose a general duty upon an insurance agent or broker to determine the appropriate amount of insurance coverage for a customer. An imposition of such a duty would unduly burden insurance agents and their companies and hinder the free marketplace of insurance.

Our conclusion that no duty is owed under the facts of this case is in accord with decisions from other states which have dealt with the issue of whether insurance agents owe customers a duty to advise them as to the amount of coverage that is necessary to cover their needs. These decisions uniformly decline to expand an insurance agent's duty to include a duty to advise about the availability or adequacy of insurance coverage in the absence of a special relationship or extended agency agreement between the insurance agent and customer. *See Nowell v. Dawn–Leavitt Agency, Inc.,* 127 Ariz. 48, 617 P.2d 1164, 1168 (App.1980); *Jones v. Grewe,* 189 Cal.App.3d 950, 234 Cal.Rptr. 717, 721 (1987); *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984); *Bruner v. League General Ins. Co.,* 164 Mich.App. 28, 416 N.W.2d 318, 320 (1987); *Palmer v. Pacific Indem. Co.,* 74 Mich.App. 259, 254 N.W.2d 52, 56 (1977); and *Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343, 346–47 (1990). In discussing this line of authority, this court focuses on *Sandbulte* and *Jones* due to the factual similarity of those decisions to the case at bar.

In *Sandbulte,* 343 N.W.2d 457, the Iowa Supreme Court was presented with facts similar to those here. In *Sandbulte,* the plaintiffs brought an action against their automobile insurance company and its agents for negligent breach of a duty under an implied agency agreement. *Id.* at 461. The plaintiffs claimed that the insurance agents should have advised them as to the amount of automobile insurance they required for complete coverage. *Id.* Plaintiffs appealed from a grant of summary judgment entered against them on this claim.

In affirming the grant of summary judgment for the insurance agents, the *Sandbulte* court considered whether the insurance company and its agents had a duty to advise the plaintiffs concerning the proper amount of insurance coverage. The court noted that insurance agents owe a general duty "to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Id.* at 464. Furthermore, in order for an insurance agent to owe a greater duty,

---

**6.** The sixth factor of the *McCarthy* recognizes that Missouri's legislature has increasingly legislated concerning insurance coverage. Since

there is no evidence of legislative activity with regard to the type of claim in this case, this factor is inapplicable. 871 S.W.2d at 86.

such as advising a customer as to coverage amounts necessary, there must be evidence of an expanded agency agreement. *Id.* Such an agreement exists "when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advise apart from premiums paid by the insured." *Id.*

The *Sandbulte* court rejected the plaintiffs' assertion that an expanded agency agreement existed between them and their insurance agent because they had purchased insurance from the agent for several years and had requested the agent to provide "sufficient coverage" for them. *Id.* at 465. The court held that merely purchasing insurance from an insurance agent for several years is insufficient to demonstrate an expanded duty on the part of the agent as part of an expanded agency agreement. *Id.* Furthermore, the court noted that "[p]urchasers of insurance generally seek 'sufficient coverage.' To permit a conversation such as this to serve as the basis for an issue of fact leading to a finding of an expanded principal-agent relationship would in substance make the agent a blanket insurer for his principal." *Id.*

The California Court of Appeals has also considered the issue. In *Jones,* 234 Cal. Rptr. at 718–19, the plaintiffs sued their insurance agent for breach of fiduciary duty for failing to provide them with sufficient liability insurance to protect their assets after a $1.5 million judgment was entered against them in a negligence action. Plaintiffs appealed from the dismissal of their cause of action.

In affirming the trial court's dismissal of the breach of fiduciary duty claim, the *Jones* court noted that insurance agents have a general duty to "use reasonable care, diligence and judgment in procuring the insurance requested by the insured." *Id.* at 719. The court held that "[t]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection . . . ." *Id.* at 720. In determining whether an expanded agency agreement existed whereby the insurance agent would have a duty to advise the plain-

tiffs in such a fashion, the court noted that the only allegations related to the longstanding relationship between the insureds and the insurance agency, as well as the fact that the insureds requested "sufficient coverage." *Id.* at 721. Citing *Sandbulte,* the court determined that these were insufficient, holding that "[i]t is the insured's responsibility to advise the agent of the insurance he wants, including the limits of the policy to be issued." *Id.*

Application of this authority supports this court's public policy analysis under *McCarthy.* First, this court notes that both *Sandbulte* and *Jones* recognize the same general duty on the part of insurance agents to use reasonable care in procuring insurance as does Missouri law. Therefore, their interpretation that this general duty does not include a duty to advise as to amounts of insurance is persuasive authority in this case. Furthermore, no Missouri cases have adopted the expanded agency agreement concept. Even if it were applied, the Manzellas failed to prove the existence of such a relationship between them and Gilbert–Magill. Here, as in *Sandbulte* and *Jones,* the Manzellas' contentions that they relied on Gilbert–Magill for several years and that they requested "sufficient coverage" for their insurance needs is insufficient to establish an expanded agency agreement or special relationship. There is also no evidence in this case that Gilbert–Magill held itself out to be an expert on insurance matters or was paid anything more than normal insurance premiums. As a result, even a more liberal construction of the insurance agent's duty does not aid the Manzellas' claim.

Therefore, this court holds that it was the Manzellas' responsibility to inform Gilbert–Magill's agent of the type of insurance they desired as well as the limits of that coverage. The Manzellas did not request a specific amount of coverage which Mr. Johnson failed to procure. In light of this fact, as well as our analysis of the *McCarthy* policy factors, this court declines to extend the duty of an insurance agent or broker to the extent that the Manzellas would have us.

■ The Manzellas alternatively claim that Gilbert–Magill had a duty to abide by

Ohio Casualty's underwriting guidelines and was negligent because the insurance policy drafted by Mr. Johnson failed to comply with the company's underwriting guidelines for adequate amounts of insurance coverage. Specifically, the Manzellas claim that their Ohio Casualty policy failed to meet two of the company's guidelines. First, the Manzellas' 2,000 square foot delicatessen was only insured for $45,000 while the restaurant policy guidelines require a minimum coverage of $40 per square foot of restaurant area. Therefore, they claim that under the guidelines Mr. Johnson should have obtained at least $80,000 in fire protection coverage. In addition, the Manzellas claim that their policy failed to comply with the guideline that the coverage limits must reflect the full, 100% insurable value of the building and the business personal property.

■ In their brief before this court, the Manzellas fail to cite any authority for the proposition that an insurance agency or its agent have a legal duty to customers to abide by underwriting guidelines in placing insurance coverage. They rely on Missouri law that "[e]vidence of industry custom or standard is admissible proof in a negligence case." *Pierce v. Platte–Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 772 (Mo. banc 1989). Clearly, industry standards are admissible to show that an insurance agency breached its duty owed to individual customers. *See id.; Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 231 (Mo.App.1990). However, the Manzellas miss two crucial points in their argument. First, an insurance company's own underwriting guidelines are not the same as industry standards. Second, in order for industry standards to be admissible, the defendant must have a duty to which the standards are relevant. As this court has already noted, there is no authority in Missouri law that Gilbert–Magill had a duty under the circumstances of this case and the *McCarthy* policy analysis militates against imposing such a duty.

Furthermore, this court notes that the evidence in the record does not establish that the guidelines at issue were even applicable to the Manzellas' delicatessen. The guidelines concerning a minimum of $40 of cover-

age per square foot of restaurant space only applied to restaurants, not delicatessens. The restaurant policy which was governed by this guideline was only for restaurants open for business over two years and the Manzellas did not qualify for this policy because their delicatessen had not been open that long when the policy was purchased.

Point I is denied.

### Point 2—Procedural Deficiencies

■ As their second point on appeal, the Manzellas claim that the trial court erred in granting Gilbert–Magill's motion for judgment notwithstanding the verdict because its motion for a directed verdict failed to comply with Rule 72.01. The Manzellas contend that Gilbert–Magill violated Rule 72.01(b) by failing to properly file a written motion for a directed verdict at the close of all the evidence. As a result, the Manzellas claim that Gilbert–Magill waived its right to file a motion for judgment notwithstanding the verdict. The Manzellas concede that Gilbert–Magill orally moved for a directed verdict, but contend that this was not sufficient because a written motion is required under the rule. Therefore, they argue that Gilbert–Magill's motion for judgment notwithstanding the verdict was not properly preserved through the required filing of a written motion for a directed verdict at the close of all the evidence.

■ Under Rule 72.01(b), a party must move for a directed verdict at the close of all the evidence in order to preserve a claim for judgment notwithstanding the verdict. *White v. Land Clearance for Redevelopment Authority*, 841 S.W.2d 691, 694 (Mo.App. 1992). Rule 72.01(b) provides, in pertinent part:

A party may move for a directed verdict at the close of all the evidence. Whenever such motion is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than thirty days after entry of judgment, *a party who has moved for a directed verdict may move to have the verdict and any judg-*

*ment entered thereon set aside* and to have judgment entered in accordance with the motion for a directed verdict....

(Emphasis added). A party's failure to move for a directed verdict constitutes a waiver of the right to file a motion for judgment notwithstanding the verdict. *Estate of Gross v. Gross,* 840 S.W.2d 253, 256 (Mo.App.1992). However, Rule 72.01 does not address the required form of the motion.

Under Rule 55.26(a), "[a]n application to the court for an order shall be by motion which, *unless made during a hearing or trial, shall be made in writing. ...*" (emphasis added). Here, Gilbert–Magill orally moved for a directed verdict during trial at the end of the Manzellas' case and again at the close of all the evidence. Under Rule 55.26(a), an oral motion for a directed verdict, made in open court at the close of the evidence is a proper motion, although a written motion is preferred. *King v. Clifton,* 648 S.W.2d 193, 196 (Mo.App.1983).

Here, Gilbert–Magill made an oral motion for a directed verdict at the close of all the evidence. Gilbert–Magill orally argued before the court during trial that the directed verdict should be granted because, under Missouri law, an insurance agent does not have a duty to the customer in this situation. The Manzellas acknowledge the fact that Gilbert–Magill made the motion and do not contest the substance of that motion. Therefore, Gilbert–Magill's oral motion for a directed verdict was sufficient to preserve the motion for judgment notwithstanding the verdict. Point II is denied.

The judgment of the trial court is affirmed.

All concur.