ZUBRES RADIOLOGY,
et al., Appellants,

v.

PROVIDERS INSURANCE
CONSULTANTS, et al.,
Respondents.

No. WD 69587.

Missouri Court of Appeals,
Western District.

Jan. 20, 2009.

---

Patricia Ann Wilcox, St. Louis, MO, for Appellants.

Lori R. Koch, St. Louis, MO, for Respondent Providers Insurance.

Dana Lee Frese, Jefferson City, MO, for Respondent Medical Liability Alliance and Missouri Hospital Plan.

Before VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS, Judge and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Presiding Judge.

Zubres Radiology, Inc., P.C. and Mark Zubres (collectively Zubres) appeal the

dismissal of their petition against Providers Insurance Consultants, Inc.; Hospital Services Group, Inc.; Medical Liability Alliance; Missouri Hospital Plan; Healthcare Services Association; William Robert Leigh; and Helen M. Winge (collectively Providers). The judgment of the trial court is affirmed.

## Facts Alleged in Petition and Procedural History

Zubres Radiology is a professional corporation. Mark Zubres is a physician and president of Zubres Radiology. Healthcare Services Association (HSA) is a Missouri not-for-profit corporation formed to assist members in offering high quality health care services. Hospital Services Group, Inc. (HSG) is a wholly owned subsidiary of HSA that provides management and insurance services for Missouri Hospital Plan (MHP) and Medical Liability Alliance (MLA). Providers Insurance Consultants, Inc. (ProCon) is a wholly owned subsidiary of HSG. ProCon is licensed as an insurance company in the State of Missouri. Helen M. Winge is a licensed insurance agent in Missouri and was an underwriter for HSG. William Robert Leigh is a licensed insurance agent in Missouri and worked as an insurance agent for ProCon.

MHP is a medical malpractice assessment association that provides professional and general liability insurance coverage to hospitals in Missouri. MLA is a wholly owned subsidiary of MHP that provides professional liability insurance for independent staff physicians affiliated with member hospitals of MHP.

In August 2000, HSA, HSG, ProCon, and MHP entered into a Master Agreement with The Virginia Insurance Reciprocal (TVIR) and its affiliate, The Reciprocal Group (TRG), to combine the business operations of the companies. Pursuant to the terms of the agreement, MHP and MLA would cease issuing insurance policies and TRG would offer insurance coverage to new subscribers.

In December 2001, ProCon's agent, William Robert Leigh, procured medical malpractice insurance for Zubres through Doctors Insurance Reciprocal (DIR), an affiliate of TRG. DIR issued a certificate of insurance to Zubres under Policy No. DPL 1306101–12 signed by Helen M. Winge.

In March 2002, the insurance industry rating firm, A.M. Best, downgraded TRG and its entities, including DIR, to a B— rating. In April 2002, the boards of directors of HSG, MHP, and MLA unanimously voted to terminate the Master Agreement. HSG, MHP, and MLA then contacted certain policyholders and offered to replace or renew their TRG professional and general liability policies with similar policies issued by MHP and MLA. Zubres, whose policy was to expire in December 2002, was not offered the option to replace its DIR policy with a policy issued by MLA. Zubres was never notified concerning the downgrading of DIR and the probable consequences of the downgrading.

In August 2002, Zubres became aware of a medical malpractice action filed against it in Jasper County. In August 2005, summary judgment was entered in favor of the defendants, including Zubres. The plaintiffs appealed the judgment, and the matter was eventually transferred to the Missouri Supreme Court, which affirmed the judgment of the circuit court.

In January 2003, TRG and its affiliate, DIR, was placed into receivership and was eventually ordered to be liquidated. Thereafter, Zubres was informed that due to the insolvency and liquidation, it no longer had insurance coverage for the medical malpractice lawsuit and would need to pay for its continued legal representation.

The plaintiff in the medical malpractice lawsuit died in March 2006. His son filed a wrongful death action against Zubres. Zubres' new insurance carrier denied coverage for the wrongful death action because it arose from the same medical incident as the medical malpractice action such that coverage should be provided under the terms of the DIR policy. As a result, Zubres is exposed to potential liability and has incurred, and will continue to incur, litigation costs and expenses in defending itself in the wrongful death action.

Zubres filed its five-count petition against Providers in June 2007. Count I sought to pierce the corporate veil of the Corporate Providers; Count II alleged negligence against all Providers; Count III alleged fraud against all Providers; Count IV alleged that Providers breached their duty of good faith and fair dealing; and Count V sought a declaratory judgment regarding future liabilities arising from the medical malpractice and wrongful death lawsuits. Thereafter, Providers filed their motions to dismiss the petition. Zubres filed its response to the motions to dismiss, including a request for leave to amend its petition. Following a hearing on the motions, the trial court issued its judgment sustaining the motions to dismiss. This appeal by Zubres followed.

### Dismissal of Petition

■ In its first point on appeal, Zubres contends that the trial court erred in dismissing its petition because the petition stated a claim upon which relief can be granted. In its judgment, the trial court did not specify its reasons for dismissing Zubres' petition. When the trial court does not specify its reasons for dismissing a petition, the appellate court presumes the trial court acted for one or more of the reasons enumerated in the motion to dismiss. *Mobius Mgmt. Sys., Inc. v. W. Physician Search, L.L.C.,* 175 S.W.3d 186, 188 (Mo.App. E.D.2005). The appellate court must affirm the dismissal if any ground asserted in the motion to dismiss is proper. *Id.* In their motions to dismiss, Providers asserted that Zubres' petition failed to state a cause of action upon which relief can be granted. They further asserted that they owed no duty to Zubres under the circumstances alleged in the petition.

■ A motion to dismiss for failure to state a cause of action attacks the adequacy of the plaintiff's pleadings. *Bosch v. St. Louis Healthcare Network,* 41 S.W.3d 462, 463–64 (Mo. banc 2001). It assumes that all of the pleaded facts are true and grants to the plaintiff all reasonable inferences therefrom. *Id.* at 464. " '[T]he petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case.' " *Id.* (quoting *Nazeri v. Mo. Valley Coll.,* 860 S.W.2d 303, 306 (Mo. banc 1993)). The dismissal of a petition for failure to state a cause of action is reviewed *de novo. Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 768 (Mo. banc 2007).

■ Zubres' petition contained five counts. Count I sought to pierce the corporate veil of the Corporate Providers. To pierce the corporate veil, a plaintiff must show:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the corporation to commit fraud or

wrong, to perpetrate the violation of statutory or *other positive legal duty,* or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*66, Inc. v. Crestwood Commons Redevelopment Corp.,* 998 S.W.2d 32, 40 (Mo. banc 1999); *Mobius,* 175 S.W.3d at 188–89.

■ In Count II, Zubres alleged negligence against all Providers. "In any negligence action, the plaintiff must demonstrate that the defendant had a legal duty to protect the plaintiff from injury, that the defendant failed to carry out that duty, and that the defendant's failure proximately caused injury to the plaintiff." *Midwest Bankcentre v. Old Republic Title Co. of St. Louis,* 247 S.W.3d 116, 122–23 (Mo.App. E.D.2008).

■ In Count III, Zubres alleged that Providers committed fraud in not disclosing the financial issues of TRG. Fraud may be based on the misrepresentation of a material fact by silence. *Kansas City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P'ship,* 868 S.W.2d 210, 219 (Mo.App. W.D.1994). "The same nine elements required to establish fraud by an affirmative misrepresentation must be proven in a fraud by silence claim." *Id.* Silence or nondisclosure becomes misrepresentation only where a duty to disclose exists. *Bohac v. Walsh,* 223 S.W.3d 858, 864 (Mo.App. E.D.2007); *Corrigan,* 868 S.W.2d at 219. A duty to disclose exists where there is a relationship of trust and confidence between the parties or where one of the parties has superior knowledge not within the fair and reasonable reach of the other party. *Bohac,* 223 S.W.3d at 864; *Corrigan,* 868 S.W.2d at 219. Whether a duty to disclose exists and whether the circumstances constitute fraud must be determined on the facts of the particular case. *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 720 (Mo.App. W.D. 1995).

■ In Count IV, Zubres alleged that Providers breached their duty of good faith and fair dealing. "Missouri law implies a covenant of good faith and fair dealing in every contract." *Spencer Reed Group, Inc. v. Pickett,* 163 S.W.3d 570, 574 (Mo.App. W.D.2005). The covenant of good faith and fair dealing is not " 'an overflowing cornucopia of wished-for legal duties.' " *Schell v. LifeMark Hosps. of Mo.,* 92 S.W.3d 222, 230 (Mo.App. W.D.2002)(quoting *Comprehensive Care Corp. v. RehabCare Corp.,* 98 F.3d 1063, 1066 (8th Cir.1996)). Rather, it encompasses only "an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Pickett,* 163 S.W.3d at 574; *Schell,* 92 S.W.3d at 230. " 'That duty prevents one party to the contract to exercise a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract.' " *City of St. Joseph v. Lake Contrary Sewer Dist.,* 251 S.W.3d 362, 370 (Mo.App. W.D.2008) (citation omitted).

Finally, in Count V, Zubres sought a declaratory judgment finding that Providers must indemnify it against all future liabilities arising from the medical malpractice lawsuit and the wrongful death lawsuit due to Providers' negligent and willful misconduct.

■ All of Zubres' claims against Providers have a common element—a legal duty owed by one party to the other. Whether a legal duty exists is a matter of

law for the court to decide. *Manzella v. Gilbert–Magill Co.*, 965 S.W.2d 221, 225 (Mo.App. W.D.1998). "Essential to the finding of a duty is 'the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care.'" *Id.* (citation omitted). Under Missouri law, an insurance agent or broker who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance. *Id.* "If the insurance agent or broker cannot or does not obtain the requested insurance, the agent or broker has a duty to timely notify the customer." *Id. See also Hecker v. Mo. Prop. Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995). An agency relationship and any corresponding duty, however, ceases on execution and delivery of the policy to the insured. *Hecker*, 891 S.W.2d at 816.

In this case, Zubres did not allege that Providers breached their duty to properly procure the insurance specifically requested by it or their duty to inform it of their inability to obtain the requested insurance. Rather, Zubres alleged that Providers had a legal duty to notify it of DIR's financial downgrade by A.M. Best and to give it the opportunity to renew or place its policy with MHP and/or MLA or another insurance carrier. Zubres cites no cases supporting its allegation. After obtaining and delivering the DIR policy, the agency relationship between Zubres and Providers and the corresponding duty no longer existed. Providers did not have a duty to continue to monitor the financial condition of DIR. The allegations in Zubres' petition were not sufficient to create a duty beyond procuring the originally requested insurance. *See Hecker*, 891 S.W.2d at 817 (insurance agent has no duty to notify insured of decision not to submit renewal application on their behalf); *Manzella*, 965 S.W.2d at 227 (insurance agent has no duty to determine the appropriate amount of insurance coverage for customer); *Farmers Ins. Co. v. McCarthy*, 871 S.W.2d 82, 86 (Mo.App. E.D.1994) (insurance agent has no duty to advise potential customer of optional coverages that may be available); *Matthews v. Schumacher*, 660 S.W.2d 357, 359 (Mo.App. E.D.1983)(insurance agent has no duty to maintain insurance policy or to advise clients to pay overdue premium within extension period); *Barnes v. Metro. Life Ins. Co.*, 612 S.W.2d 786, 787–88 (Mo.App. E.D.1981)(insurance agent has no duty to inform potential clients of significance of provisions in another insurer's policy already held by them).[1] Without such a duty, Zubres' claims in Counts I through V could not lie. The trial court did not, therefore, err in dismissing Zubres' petition for failure to state a claim upon which relief can be granted. The point is denied.

### Amendment of Petition

In its second point on appeal, Zubres asserts that the trial court abused its discretion in not granting it leave to amend its petition. Rule 55.33(a) governs the amendment of pleadings. "The denial of leave to amend is within the discretion of the trial court and that discretion will not be disturbed unless there is a showing

1. In its reply brief, Zubres cites *Hlavaty v. Kribs Ford, Inc.*, 622 S.W.2d 328 (Mo.App. E.D.1981), to suggest the existence of a duty. But *Hlavaty* acknowledged the general rule regarding an insurance agent's procurement of insurance for another and only found a post-procurement duty to inform policyholders in the "unusual circumstances" where the insurer expressly asked the agent, twice, to notify insureds of the insurer's receivership and of impending policy cancellation. *Id.* at 330. The narrow holding in *Hlavaty* does not apply on the pleaded facts here.

that the court palpably and obviously abused its discretion." *Curnutt v. Scott Melvin Trans., Inc.,* 903 S.W.2d 184, 193 (Mo.App. W.D.1995). Factors to be considered in deciding whether to allow a party to amend a pleading include:

> 1) hardship to the moving party if leave to amend is not granted; 2) reasons for failure to include any new matter in previous pleadings; 3) timeliness of the application; 4) whether an amendment could cure any defects of the moving party's pleading; and 5) injustice to the party opposing the motion.

*Moynihan v. City of Manchester,* 203 S.W.3d 774, 776 (Mo.App. E.D.2006) (citation omitted); *Curnutt,* 903 S.W.2d at 193.

In its written response to the motions to dismiss, Zubres alternatively requested leave to amend its petition. It did not, however, recite any new or additional facts or claims that it wished to assert in an amended petition nor attach a proposed amended petition to its response. Similarly, Zubres fails to identify in its brief what new allegations it wishes to present in an amended petition to cure the defects of its petition. The trial court, therefore, did not abuse its discretion in not granting Zubres leave to amend its petition. The point is denied.

The judgment of the trial court is affirmed.

All concur.