BUCKSAW RESORT, L.L.C., Respondent,

v.

Eugene MEHRTENS, Appellant.

No. WD 75877.

Missouri Court of Appeals, Western District.

Nov. 19, 2013.

Thomas Magee, Margaret Fowler, St. Louis, MO, for Appellant.

William Lentz, Independence, MO, for Respondent.

Before Division One VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS, and ANTHONY REX GABBERT, JJ.

ANTHONY REX GABBERT, Judge.

Eugene Mehrtens ("Broker") appeals the circuit court's judgment following a jury verdict in favor of Bucksaw Resort, LLC ("Bucksaw") on Bucksaw's negligent failure to procure insurance claim. Broker raises four points on appeal. In his first two points on appeal, Broker argues that the circuit court erred in denying his motions for directed verdict and motion for judgment notwithstanding the verdict because Bucksaw failed to make a submissible case for negligent failure to procure insurance on two grounds. In his first point, Broker argues that Bucksaw failed to make a submissible case because Bucksaw failed to show that Broker did not procure the agreed upon insurance. In his second point, Broker argues that Bucksaw failed to make a submissible case because Bucksaw failed to show that its damages were proximately caused by Broker's negligence. In his third point on appeal, Broker argues that the circuit court erred in denying his motions for directed verdict and motion for judgment notwithstanding the verdict because Bucksaw failed to establish that it was damaged because the jury's verdict of $54,000 was satisfied by Bucksaw's settlement with the insurance companies. In his last point on appeal, Broker argues that the circuit court erred in denying his motion to amend the judgment because Broker was entitled to a reduction in the judgment in the amount of Bucksaw's settlement with the insurance companies because the settlement proceeds covered all of the damages Bucksaw claimed at trial and, therefore, constituted a double recovery. We reverse and remand the circuit court's judgment.

## Statement of Facts

The evidence in the light most favorable to the verdict shows that James Moritz, owner of Bucksaw, purchased Bucksaw on October 31, 2006. Bucksaw produces income from fishing tournaments, family reunions, seasonal slip rentals of boats, sales at both the restaurant and marina, and rental of its forty-room lodge and six cabins. It also has a 100 site RV park on its premise. Prior to the October 31, 2006 closing, Moritz's lending bank required him to obtain property insurance for the premise. Broker, an independent insurance broker who had sold insurance since 1985, had written insurance for Bucksaw's prior owner. The prior owner referred Broker to Moritz.

Moritz first met Broker at Bucksaw's restaurant prior to the closing. Broker provided Moritz a copy of the prior owner's policy. They discussed the coverage on the docks, marina, the parking lot, fencing, all of Bucksaw's personal property, the pavilions, the rigging shop, the forty-room lodge, and six cabins. They also took a personal tour of the area during which Moritz pointed out the areas that he wanted covered by insurance. Moritz advised Broker that he wanted all the property, including the parking lot, fencing,

and riprap[1] to be covered. Moritz also discussed that he wanted Bucksaw to have coverage for loss of business income. He wanted all of these things to be covered from flood damage as well.

Broker procured an insurance policy from Federal Insurance Company ("Federal") and an insurance policy from XL Specialty Insurance Company ("XL"). Broker explained that there was not one insurance company that would insure what was on the water and what was on the land. Broker later testified at trial, however, that the Federal policy was written broadly enough to cover everything.

In 2007, Bucksaw experienced a flood. The water rose over the parking lot and up against a wall at the marina. It covered the boat launch and required Bucksaw to build a levee so that people could travel from the lodge to the marina. As a result of the flood, Bucksaw lost business income. Additionally, the chairs in its pavilion were damaged. The rock covering the parking lot disappeared. The fencing washed away, and the riprap washed away in some spots.

Moritz contacted Broker following the flood. Broker asked Moritz to provide information in order to pursue an insurance claim. Bucksaw received several letters from XL[2] explicitly stating that the policy did not include coverage for the fences and the land. In one letter, XL advises that the policy does not cover loss of business income. However, in a later letter, XL indicates that the policy does cover loss of business income. With regards to Bucksaw's buildings, XL's letters contended that because the damages to the

buildings did not exceed the policy deductible, no further action was required by XL.

Moritz also received several letters from Federal[3] dealing with his business income claims. One letter states that Federal needed more business information to calculate how much business income was lost. Another letter states that there was business income on the floating property listed in the policy. There is no language in the letters or in the definition of floating property dealing with the pavilion chairs, parking lot, riprap, or fencing.

Bucksaw filed a four-count petition against Federal, XL, and Broker. In the first two counts, Bucksaw asserted breach of contract claims against the two insurance companies. In the third count, Bucksaw asserted a claim of reformation against all three defendants. In the fourth count, Bucksaw asserted a claim of negligence against all three defendants claiming that each defendant had a duty to provide the insurance appropriate for the marina and with coverages represented to Bucksaw, including all structures, improvements, and business interruption.

After filing suit but before trial, Bucksaw settled with both insurance companies. An offer of proof was made outside the presence of the jury to show that the stipulated amounts of the respective settlements were $24,000 paid by XL and $97,100 paid by Federal. After the settlement, both insurance companies were dismissed with prejudice from the lawsuit. Bucksaw then continued its negligent failure to procure insurance suit against Broker.

1. Riprap is a larger rock that is placed on the edge of a waterway to help control erosion.

2. Technically, the letters came from Boulder Claims on behalf of XL because XL did not have an adjuster in the area. "XL" will be

used to reference all letters from Boulder Claims dealing with the policy issued by XL.

3. Federal was the issuing company but the letters were from Chubb Group of Insurance, which is a division of Federal.

At trial, the court did not allow evidence of the settlement to be introduced to the jury. The court did allow the Broker to put on evidence to show that the two insurance companies had paid Bucksaw for damages. At the close of Bucksaw's evidence and again at the close of all evidence, Broker moved for a directed verdict. The trial court denied the motions. The jury entered a verdict in favor of Bucksaw in the amount of $54,000. The trial court entered judgment upon the jury's verdict for the full amount. Subsequently, Broker filed his motion for judgment notwithstanding the verdict, or, in the alternative, motion to amend the judgment, which the court also denied. Broker appeals.

## Standard of Review

Review of a denied motion for judgment notwithstanding the verdict is essentially the same standard of review as for a denial of a motion for directed verdict. *Crawford v. Shop 'N Save Warehouse Foods, Inc.*, 91 S.W.3d 646, 650 (Mo.App.2002). "A case may not be submitted unless legal and substantial evidence supports each fact essential to liability." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012) (citation omitted). "Whether plaintiff made a submissible case is a question of law subject to *de novo* review." *D.R. Sherry Constr., LTD. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 904 (Mo. banc 2010) (citations omitted). Evidence is viewed in a light most favorable to the jury's verdict, and the court will grant the plaintiff all reasonable inferences therefrom. *Id.* Any evidence or inferences to the contrary are disregarded. *Id.* A jury verdict will be reversed for insufficient evidence only where there is a complete absence of probative facts to support the jury's decision. *Shobe v. Kelly*, 279 S.W.3d 203, 209 (Mo. App.2009).

## Submissible Case

In his first point, Broker argues that the circuit court erred in denying his motions for directed verdict and motion for judgment notwithstanding the verdict because Bucksaw failed to make a submissible case in that Bucksaw failed to show that Broker did not procure the agreed upon insurance. In his second point, Broker argues that Bucksaw failed to make a submissible case because Bucksaw failed to show that its damages were proximately caused by Broker's negligence. We disagree.

■■■ "Under Missouri law, an insurance agent or broker who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 341 (Mo.App.2009) (citation omitted). "If the insurance agent or broker cannot or does not obtain the requested insurance, the agent or broker has a duty to timely notify the insured." *Id.* In order to make a submissible case for an alleged negligent failure to procure insurance, a plaintiff must present evidence to show: (1) the defendant agent or broker agreed to procure, for compensation, the requested insurance on behalf of the plaintiff; (2) the defendant failed to procure the agreed upon insurance, and in so doing, failed to exercise reasonable care and diligence; and (3) damages resulted therefrom. *Parshall v. Buetzer*, 121 S.W.3d 548, 554 (Mo.App.2003). A broker fulfills his duty when he brings the insurance company and the insured together in a contract of insurance as requested by the insured. *Wilmering v. Lexington Ins. Co.*, 678 S.W.2d 865, 872 (Mo.App.1984).

■■■ At trial, Bucksaw put on evidence that Moritz met with Broker at the resort to discuss what insurance coverage Moritz

wanted. Moritz testified that he and Broker discussed the coverage on the docks, the marina, the parking lot, fencing, all of Bucksaw's personal property, the pavilions, the rigging shop, the forty-room lodge, and six cabins. He also testified that they took a personal tour of the area during which Moritz pointed out the areas that he wanted covered by insurance. Moritz testified that he specifically stated to Broker that he wanted all the property, including the parking lot, fencing, and riprap, to be covered. Thus, the evidence shows that Broker was made aware of the specific coverage desired by Moritz. Once informed of what Moritz wanted insured, Broker then had a duty to procure the requested insurance or timely notify Moritz that the requested insurance was not obtained.

There is no dispute that Broker obtained insurance for Moritz. The issue is whether the insurance Broker obtained covered all of the property that Moritz requested. At trial, Bucksaw offered and the court admitted into evidence numerous exhibits, including claim letters from both insurance companies and both insurance policies. Moritz testified that he interpreted the claim letters to be "denials" of claims. Broker argues that because Moritz admitted that the Federal claim letters did not explicitly state anything regarding the parking lot, pavilion chairs, riprap, and fencing not being covered under the policy that Bucksaw failed to prove that Broker did not procure the insurance requested. In furthering his argument, Broker relies upon two Missouri cases, several cases from other jurisdictions, as well as direct quotations from the Federal policy. We find none of Broker's arguments persuasive.

Here, Bucksaw presented sufficient evidence to show that the insurance that Broker procured for Bucksaw did not cover all of the requested property. First, Bucksaw presented claim letters from the two insurance companies. One of the claim letters from XL explicitly states that the policy does not include coverage for the fences and the land. From Federal, Bucksaw received several claim letters. One letter states that Federal needed more business information to calculate how much business income was lost. Another letter states that there was business income on the floating property listed in the policy. There is no language in the letters or in the definition of floating property dealing with the pavilion chairs, parking lot, riprap, or fencing.

Second, Bucksaw submitted into evidence both the Federal and XL insurance policies. While there is no dispute that the XL policy does not cover all of the requested property, Broker argues that Federal's policy documents contained an endorsement providing coverage for flood damage of Bucksaw's entire "Premises." Broker goes on to cite excerpts from the policy document. However, Broker fails to cite what the endorsement applies to. The language that Broker ignores states:

This Endorsement applies to the following forms:
BUILDING AND PERSONAL PROPERTY BUSINESS INCOME WITH EXTRA EXPENSE ELECTRONIC DATA PROCESSING PROPERTY EXTRA EXPENSE PROPERTY/BUSINESS INCOME CONDITIONS & DEFINITIONS ACCOUNTS REC., FINE ARTS, MONEY & SEC., VALUABLE PAPERS

Thus, the entire "Premises" is qualified by the above language and this particular endorsement is, therefore, limited to the above stated forms. The policy documents include definitions for "BUILDING & PERSONAL PROPERTY." Neither of these definitions explicitly state that cer-

tain damaged property, such as the parking lot, riprap, or fencing, are either covered or excluded.

Third, Broker testified that in his 25 years of experience of procuring marina insurance policies he had never seen a policy that covered riprap. Despite this fact, Broker testified that after reviewing Bucksaw's Federal policy he believed that the policy was written so broadly that it would cover the riprap. While Broker presented contradictory evidence to show that the policy did in fact cover all of the property requested by Moritz, when determining whether Bucksaw made a submissible case, this Court accepts Bucksaw's evidence as true, disregards Broker's contradictory evidence, and draws all inferences in favor of Bucksaw's case. *See Shobe,* 279 S.W.3d at 209. Therefore, considering all of the aforementioned evidence, Bucksaw presented sufficient evidence to show that the insurance that Broker procured for Bucksaw did not cover all of the requested property.

■■ A submissible case for negligent failure to procure insurance requires proof of damages. *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.,* 299 S.W.3d 735, 738 (Mo.App.2009). Broker next argues that Bucksaw failed to show that its damages were proximately caused by Broker's negligence. In support of his point, Broker argues that because Bucksaw settled with the two insurance companies Bucksaw was not damaged by Broker's negligence. We disagree.

■ "The general rule is that a party may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed." *Ozark Air Lines, Inc. v. Valley Oil Co., L.L.C.,* 239 S.W.3d 140,

147 (Mo.App.2007) (internal citations omitted). Here, Bucksaw put on evidence that as a result of the flood it was damaged in the amount of $414,229, while the settlements totaled $121,100. These settlement amounts were presented to the court outside the presence of the jury. However, the fact that Moritz received payments from the two insurance companies was presented to the jury.

Here, Bucksaw's claim against Broker is that as a result of Broker's negligence it was unable to recover the full amount of damages caused by the flood. *See also Busey Truck Equip., Inc.,* 299 S.W.3d at 737–38 (finding that plaintiff suffered damages when company was unable to recover the full amount of loss from the insurance company because of agent's alleged negligent failure to procure the requested insurance). Moritz presented evidence that in addition to his business interruption loss, he sustained damages of $32,990 to repair the fence, $7,046 to replace the chairs, and $294,558 to replace the stone on the bank and to repair the parking lot. All of these amounts were presented to the jury. Thus, Bucksaw put forth evidence that its failure to fully recover was due, in part, to Broker not procuring the requested insurance, and as a result of Broker's negligence, it was damaged. Therefore, the circuit court did not err in denying Broker's motions for directed verdict and motion for judgment notwithstanding the verdict because Bucksaw presented evidence to support each fact essential to liability and, therefore, made a submissible case against Broker for negligent failure to procure insurance. Points one and two are denied.

### Set–Off of Jury Verdict Amount

■ We address Broker's third and

fourth points on appeal together.[4] In Broker's third point on appeal, he argues the circuit court erred in denying his motion for judgment notwithstanding the verdict because the jury's verdict in the amount of $54,000 was satisfied by Bucksaw's settlement with the two insurance companies. In Broker's fourth point, he argues that the circuit court erred in denying his motion to amend the judgment because Broker was entitled to a reduction in the judgment in the amount of Bucksaw's settlement with the insurance companies because the settlement proceeds covered all of the damages Bucksaw claimed at trial and, therefore, constituted a double recovery. For the reasons set forth, we disagree with Broker's third point but agree with his fourth point on appeal.

 Under the facts of this case, where a set off is appropriate, the proper motion is a motion to amend the judgment not a motion for judgment notwithstanding the verdict because Broker would be entitled to have the judgment amount set off by the pre-trial settlement amount but would not be entitled to have the verdict entered in his favor. *See Moore Auto. Grp., Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo.App.2012) ("When a plaintiff receives a pretrial settlement that partially compensates his claim, the trial court 'will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law.' ") (quoting MAI 1.06 Committee Comment (1983)). Therefore, "if a plaintiff stands to recover duplicative damages for the same wrong, a defendant may plead an affirmative defense seeking to offset any judgment against it by any amounts already received by the plaintiff as compensation

for that wrong." *Moore Auto. Grp.*, 362 S.W.3d at 468.

 As stated, "[t]he general rule is that a party 'may not recover from all sources an amount in excess of the damages, sustained, or be put in a better condition than he would have been had the wrong not been committed.' " *Ozark Air Lines, Inc.*, 239 S.W.3d at 147 (quoting *Russell v. Farmers & Merchs. Ins. Co.*, 834 S.W.2d 209, 220 (Mo.App.1992)). This is true for both contract and tort claims. *Trident Grp., LLC v. Miss. Valley Roofing, Inc.*, 279 S.W.3d 192, 198 (Mo.App. 2009). Whether the claim is in contract or tort, the vice to be guarded against is a duplication of damages. *Twin River Constr. Co., Inc. v. Pub. Water Dist. No. 6*, 653 S.W.2d 682, 694 (Mo.App.1983). Under such circumstances, a set off is appropriate. *Id.*

In the original claim by Bucksaw against Federal, XL, and Broker there was no separation or distinction made as to different types of damages Bucksaw sustained against the three defendants. Furthermore, while it is unclear from the record exactly what the settlement amounts covered, the claim letters, insurance policies, and Moritz's testimony, it appears that the settlement included amounts for property damage sustained by the flood. Lastly, the jury instruction given was a standard MAI for property damage. The jury found $54,000 in property damage. The settlement amounts, however, were for $121,000. Because both amounts were for property damage, Broker is entitled to a set off in the amount of the insurance settlements. As a result, after the jury award is set off, the balance becomes zero. Thus, the circuit court erred by failing to

---

4. Satisfaction must be plead and proved. *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 180 (Mo.App.2012). Here, Broker raised this affirmative defense in his Answer. Further-

more, as set forth in the opinion, Broker also presented evidence at trial to prove this defense. Therefore, it may be raised on appeal. *See id.*

amend the judgment by setting off Bucksaw's pre-trial settlement amounts from the judgment amount. Point four is granted.

We conclude, therefore, that the circuit court did not err in denying Broker's motions for directed verdict and his motion for judgment notwithstanding the verdict. Bucksaw presented evidence to support each fact essential to liability for a negligent failure to procure insurance claim and, therefore, made a submissible case. The circuit court did not err in denying Broker's motion for judgment notwithstanding the verdict but erred in denying his motion to amend the judgment because Broker was entitled to a set off in the amount of Bucksaw's insurance settlements. Therefore, we reverse and remand the circuit court's judgment with directions that judgment be entered in accordance with this opinion.

All concur.